## BALL *vs.* PRATT.

A sheriff acts *officially* in selling the property of a stranger to the execution as the property of the defendant therein.

He may take an indemnity from the plaintiff, for such an act, when done in good faith, but cannot give an indemnity to the bidders at the sale.

Where an under sheriff agreed with the bidders at a sheriff's sale to warrant the title to the property sold, *held* that such an agreement rested upon no consideration of benefit to the sheriff, except as it necessarily tended to increase the fees and perquisites of his office; and that in that respect it was void, as against public policy.

A sheriff, while in the discharge of his official duty, cannot divest himself of his official character, and do as an individual what he cannot do as a public officer.

THE complaint alleged, in substance, that the defendant, being under sheriff of the county of Jefferson, and having an execution against the property of Charles K. Loomis, Jacob Brown Kirby and Joseph E. Baker, in favor of Henry J. Tarbell, William S. Jennings and Andrew Millspaugh, levied the same upon certain sawed lumber as the property of Kirby & Loomis, and upon the sale thereof under the execution the plaintiff desired to bid on the property, and offered to bid on the same in case he could be assured of the title thereto ; and that thereupon the said defendant, in consideration that the plaintiff would so purchase and pay the purchase money therefor, undertook, promised and agreed with the plaintiff, that the title of said Loomis & Kirby to

Ball *v.* Pratt.

said lumber was perfect; and he would indemnify and save the plaintiff harmless against all persons claiming and to claim the same. That the plaintiff, relying upon such promise, purchased 15,456 feet of said lumber, of the value of $100, for the sum of $53, he being the highest bidder; and thereupon paid the defendant the purchase money.

It was further alleged in the complaint that the lumber was not the property of said Kirby & Loomis, but was the property of Merrit Coburn and William M. Coburn, who, as such owners, took of the lumber so sold to the plaintiff about 4595 feet, of the value of $27. And the plaintiff having taken the balance, the Coburns sued him before a justice, and recovered of him the sum of $72.22 damages for the value of the lumber so taken away by the plaintiff, and the sum of $5 for the costs of the action. That on the trial the defendant was notified and requested to defend the action, and the action was defended at the request and for the benefit of the defendant. That an appeal was taken to the county court, and the judgment affirmed, the defendant having indemnified the plaintiff for the costs of the appeal. The plaintiff having paid the judgment, brought this suit to recover his damages.

The defendant denied the complaint, except the allegations in respect to his having sold the property as under sheriff upon the execution in question. The action was tried at the Watertown circuit, in November, 1860, before Justice ALLEN and a jury.

On the trial, evidence was given that the plaintiff bid off the lumber, and that the title failed, in consequence of which he was sued and was compelled to pay a large sum for damages and costs. The defendant offered to pay him $53.12, but refused to pay him any more.

The plaintiff swore, on the trial, that "Pratt said he had a good bond of indemnity, and he would indemnify me; he got a bond of indemnity from the plaintiffs for the costs of the appeal, but did not give it to me, and I don't know what

he did with it; he told me Dorwin was his attorney; don't know if he said Dorwin was employed by plaintiffs; Pratt said, go to Dorwin and whatever he said do, do it, and I shouldn't lose a shilling any way; I have no memorandum of the warranty, it is only from recollection." Abner Reeves testified that he was present at the sale of lumber; heard some questions made as to the title; "Pratt said he was indemnified by New Yorkers, and would indemnify all who bought lumber, and would see them all harmless, and nobody that would buy, should lose a shilling; before that, no one would buy any of it; upon that they purchased, and I bought some." On his cross-examination the witness further testified: "There was no written memorandum of warranty; defendant said he would indemnify any one who bought; I bought lumber." A. L. Cooley testified that he was present at the sale, when Ball bought; he was backward about bidding; "defendant said he would see to it that those who bought should have a good title; said he was not going to be bluffed off; he was going to sell the lumber." John Hammond testified as follows: "Was present at the sale; sale was forbid; the title was questioned; Pratt said he had a written indemnity in his pocket, from the New Yorkers; if any one bought, he would indemnify him and see he did not lose a shilling." On his cross-examination the witness further testified: "Cooley forbade sale, in behalf of Coburn and Bagley; Pratt said he would see they had a good title; said he had got a written indemnity in his pocket, and would indemnify all who bid, and save them harmless; they would not get into a scrape; was going to run for sheriff, and if he got them in a scrape they would not vote for him."

The plaintiff rested his case, and the defendant's counsel moved for a nonsuit, and, in support of his motion, submitted the following points: 1. The plaintiff sues an under sheriff, on a contract made by him as under sheriff, when the action should be against his principal. The contract proved varies from the contract alleged in the complaint. 3. The

contract, if proved, is wholly without consideration, and is void. 4. The contract, if made, is one made by a public officer, is against public policy, and cannot be maintained.

The court denied the defendant's motion for a nonsuit, and directed the jury to find a verdict for the plaintiff for $136.33, and the defendant excepted.

The plaintiff having perfected judgment upon the verdict, the defendant appealed to the general term of this court.

*J. F. Starbuck,* for the appellant.

*J. Clark,* for the respondent.

*By the Court,* MORGAN, J. If we consider the under sheriff as the mere agent of the plaintiff in selling the property, there is no difficulty in holding that he would be liable to the purchaser upon an express warranty of title. (*Story on Agency,* §§ 262, 269.) The question is not without difficulty when we regard him as a public officer. The taking of this property on the execution against Kirby & Loomis was a trespass. And it was held in the case of *The People ex rel. Kellogg* v. *Schuyler,* (4 *Comst.* 173,) that the seizure of the goods of another than the defendant in the execution was an act of official misconduct on the part of the sheriff and his deputy, for which he and his sureties would be liable upon his official bond. And it was supposed by the chancellor, in delivering the opinion of the court in *Burrall* v. *Acker,* (23 *Wend.* 607, 608,) that an agreement which necessarily implied any breach of duty on the part of the sheriff, was against public policy and void. And Bronson, J. in *Browning* v. *Hanford,* (5 *Hill,* 598,) expressed the opinion that the sheriff cannot take a receipt, or any other contract in relation to the property, which will give him a remedy beyond his own liability to the creditor. He remarked: "But he cannot go beyond that and take an agreement for any thing more than an indemnity. That would be using his office and

the process of the court, for the purpose of making a profit or advantage to himself beyond his legal fees." Regarding the sale of the property in this case as a breach of duty, as it was held in *The People* v. *Schuyler*, could the sheriff o his deputy enter into an agreement with third persons to assist him in the violation of his duty? Had the sheriff a right to make an engagement beyond his duty as an officer, to warrant the title? The result would be that he might thereby increase his fees, and under color of his office deprive a third person of his property. Perhaps it might be regarded as oppressive towards third persons to allow the sheriff to take their goods under color of an execution, and enter into contracts with bidders to purchase them under a promise of indemnity. Those who purchase at a sheriff's sale have no claim to be indemnified, and they really purchase no greater interest than the sheriff can rightfully sell. It is therefore worthy of consideration whether they have any right to contract with the sheriff for a greater interest. If it be said that the sheriff, in warranting the title, warrants it as an individual and not as sheriff, it might with the same apparent propriety be said that, when he sells another's property instead of that of the defendant in the execution, he sells it as an individual and not as sheriff. For the action against him by the owner is not brought against him as sheriff, but is prosecuted against him in his individual character. And yet it seems that such a sale is *by virtue of his office*, and renders the sheriff guilty of *official* misconduct. (4 *Comst.* 173, *before cited.*)

Now while it is held that any bond of indemnity taken by the sheriff to indemnify him against an action for neglect of duty on his part, is void, (*Crocker on Sheriffs*, § 764; *and see* 1 *Comst.* 365;) and while it is held that the sheriff commits a *breach of duty* by seizing the goods of a stranger to the execution, (2 *Comst.* 173,) yet it is held that the sheriff may take a bond of indemnity from the plaintiff in the execution for seizing and selling a stranger's property, and recover

Ball *v.* Pratt.

upon it, if he is afterwards mulcted in damages. (*Crocker*, § 763. *Gardner, J. in The People* v. *Schuyler*, 2 *Comstock*, 183.)

And the statutes of this state contain provisions recognizing the right of the sheriff to protect himself by a bond of indemnity for seizing property which his process does not authorize him to take. (2 *R. S.* 4, §§ 10, 11.) The same right is recognized in numerous cases, and it is too late to call it in question. Gardner, J. in delivering the opinion of the court in *The People* v. *Schuyler*, (4 *Comst.* 183,) remarked: "The action of trespass against sheriffs for the seizure of property in the execution of legal process, is *sui generis*. It is regarded in the law, in many instances, as a means of determining the title to property, rather than in the light of an ordinary trespass. Good faith on the part of the officer is presumed, and he may consequently require and receive indemnity."

It follows, I think, that although the sheriff is guilty of a breach of official duty in selling the property of a stranger to the execution, and can claim no protection under his execution when sued in trespass for the wrong, yet he may take a bond from the plaintiff, in such a case, to indemnify him for an act which is held in some cases to be a breach of duty. Such a bond is not within the prohibition of the statute, nor against public policy, because the sheriff is supposed to act in good faith, and the suit is regarded as a proper one to try the title to the property. It is not a trespass wholly unauthorized by law, although it subjects the sheriff to all the consequences of a naked trespass, so far as the owner of the goods is concerned. Without stopping to reconcile the cases, it is enough to say that the sheriff, if he acts in good faith, can lawfully take an agreement from the plaintiff to protect him for seizing the goods of a stranger to the execution. But he cannot go beyond that and take an agreement for any thing more than an indemnity. (*Bronson, J. in Browning* v. *Hanford*, 5 *Hill*, 598.)

The case in hand shows that the sheriff took such an indemnity, and he declared to the bidders that he had it in his pocket, and when the bidders refused to bid on the property for the reason that they distrusted the title, he volunteered to warrant a good title, on his own personal responsibility.

It will be observed that he had no authority from the plaintiff to give such a warranty. Nor could he take from the plaintiff an indemnity to protect the purchaser, without violating the rule already established; which is, that the sheriff can only take an indemnity for his own protection.

It was not necessary for his protection that he should protect the bidders at the sale. The law simply allows the officer to protect himself, as it is supposed he acts in good faith when he seizes a stranger's property, and is therefore entitled to be indemnified by the plaintiff, for whose benefit he takes the responsibility. He is allowed to do this *as an officer* in the discharge of what he believes to be an *official duty*, although if he is mistaken it is, at least *constructively*, an act of *official misconduct* which would make his sureties liable upon his official bond.

In this position, having, as the case shows, been guilty of an act of trespass in seizing and selling property not belonging to the defendant in the execution, and the same act being a breach of official duty, the sheriff goes a step further and undertakes to make a contract with the bidders, that if they will buy the property he will guaranty a good title. Relying upon the personal guaranty of the sheriff, the plaintiff in this action bids off the lumber and pays the sheriff the amount of the bid.

It is already seen that the sheriff cannot use the plaintiff's indemnity to protect such a guaranty, for that is not an official act, in any sense, and is not necessary for the sheriff's protection. But it is apparent that the sheriff may be benefited by such a bargain. Its object is to induce bidders to raise their bids; and *its effect is to increase the fees of the sheriff.* Such an agreement with bidders at the sale, is

Ball *v.* Pratt.

therefore simply an arrangement by which the sheriff, *for no other benefit to himself than an increase of his legal fees,* undertakes to guaranty the title to the property sold.

It is very likely that the deputy in this case supposed that he could safely warrant the title; and that the plaintiff's bond of indemnity would enable him to protect himself if he was subjected to damages in consequence of his warranty. It is also probable that the plaintiff here, who bid off the property upon the faith of the warranty, supposed that the deputy had an indemnity, which would enable him to reimburse himself if he was subjected to damages for a breach of the warranty. But all these parties must be charged with knowledge of the law. And if I understand the law, the sheriff could not give an indemnity which could only benefit him by an increase of his fees; and which both he and the bidders must have known he had no right to give as a public officer. It is not for the sake of the sheriff as an individual that the law relieves him from such a contract; but the contract is one which purchasers at a sheriff's sale have no right to take from the officer, whose duties are prescribed by law; and who cannot with safety to the public be allowed to contract for any benefit to himself, beyond what a faithful discharge of his official duties entitles him to. The sheriff, while in the discharge of his official duties, cannot divest himself of his official character, and do as an individual what he cannot do as a public officer.

It is doubtless true that he may become the agent of the plaintiff, to a certain extent, and take responsibilities which go beyond his strict official duty, when he acts in good faith and in the supposed discharge of his duty as an officer; and that the plaintiff may protect him in doing so. But he cannot increase his fees by entering into a personal engagement on his individual account, which he is not allowed to do as a public officer. The policy of the law will not allow him to do more than his official duty with a view to increase his fees and emoluments. It cannot change the principle, because it

happens that he has made a bad bargain. He did not, in this case, expect to lose by it; and the law is violated just as effectually whether he makes or loses by it.

But it is obvious that the same considerations do not apply to other parties; and there does not appear to be any objection to a warranty of title on the part of the plaintiff in the execution. The rule is intended to keep public officers within the line of their duties, and not allow them to take advantage of their official position to make money by entering into engagements which tempt them to abuse the process of the courts, and oppress those who are to be affected by their official proceedings. In my opinion, the contract of the under sheriff with the plaintiff, in this case, to warrant the title of the property, necessarily resulted in increasing the fees of the sheriff. It was a contract to benefit the sheriff for doing something beyond his official duty, and therefore void as against public policy.

The judgment should be reversed, and a new trial granted; costs to abide the event.

Judgment accordingly.

[ONONDAGA GENERAL TERM, April 1, 1862. *Mullin, Morgan* and *Bacon,* Justices.]