ROCKWELL N. ROGERS, Appellant, v. JOHN WEIR, Respondent.

The defendant, being in possession of the plaintiff's goods, under an agreement which had expired, refused to deliver them up to the plaintiff on demand, for the reason that they had been attached by the sheriff as the property of one *Quinton Rogers*, under a claim that the plaintiff held the title in trust for and in fraud of the creditors of *Quinton Rogers*. The jury having negatived the fraud, *held*, that there was sufficient evidence of a *conversion* by the defendant.

A bailee, who sets up the title of another as an excuse for not delivering up the goods to the owner, makes himself a party to the controversy, and must stand or fall by his title.

The law, *it seems*, will protect the bailee in a case of doubt, if, instead of refusing the demand, he remains *neutral*, and suffers the claimant to take the goods upon his own responsibility.

So, *it seems*, if he qualifies his refusal by answering that he is ready to deliver the goods as soon as he has made some reasonable inquiry as to the evidence of the title, provided such excuse is made in good faith.

A sheriff, who seizes the goods of another than the defendant in the attachment, is liable to the true owner in an action of trespass.

The principle that goods levied upon by the sheriff, under an attachment, are in the custody of law, only applies *as between the sheriff and the defendant* in the attachment suit.

Whether it applies as between the sheriff and the true owner, when seized under a writ of replevin against another party: *Quere?*

APPEAL from the judgment of the Supreme Court at General Term, reversing a judgment entered upon a verdict in favor of the plaintiff.

*S. S. Spring*, for the appellant.

*D. H. Holmes*, for the respondent.

MORGAN, J. The verdict of the jury being for the whole value of the property, it is to be implied that the defendant sold a part of it, before it was attached, without the permission of the plaintiff. That amounted to $166, and there is no ground upon which the plaintiff should be deprived of the verdict to that extent, unless a new trial is granted, notwithstanding the stipulation for final judgment in this court. If the order is affirmed, and a final judgment directed, I

think it should be that the plaintiff recover that amount, to be deducted from the defendant's judgment, for costs in the Supreme Court and in this court. The plaintiff should have gone back and retried his action; and then, upon entering a judgment against him, he could have raised his points upon an appeal from the judgment, without being subjected to the disadvantage of a stipulation which, I think, should impose upon him the costs of the litigation, although he is entitled to retain in part the fruits of his verdict.

The question upon which the case turned in the court below, is one that requires careful analysis before it can be properly disposed of in this court.

As between the plaintiff and defendant, the bill of sale gave the former the undoubted right to take the property at the expiration of three months, and imposed upon the defendant the absolute duty of delivering it to him on demand.

The verdict does not settle the point of time when the plaintiff made the demand, except the fact that it was not made until after the expiration of three months.

Under the charge of the judge, however, the jury might have found upon the evidence that the demand was not made until after the property was attached by the creditors of Quinton Rogers.

The plaintiff, therefore, must assume that such was the fact; and if he succeeds in maintaining his verdict, it must be upon the ground of the defendant's refusal to give up the property after it had been attached by the sheriff.

The attachment was levied upon the property as the property of Quinton Rogers, under a claim that the plaintiff held the title in trust for him and to protect it from his creditors. The jury, however, found as a matter of fact, that this claim was unfounded. Still, I do not think that this finding would be conclusive as against the creditors who had attached the property, they not being parties to the suit. Doubtless they may try that question again in the attachment suit.

The first question I shall consider is, whether the sheriff himself could attach and keep the property as against the

true owner; or in other words, whether the property, while under attachment, is in the custody of the law.

It is said in 2 Greenleaf Ev., § 645, upon the authority of *Verrall* v. *Robinson* (2 Cr. M. & R., 495), that when the plaintiff's goods were attached in the hands of his bailee, who on that account refused to deliver them up, it was no conversion. The refusal in that case, as in this, *was absolute.* The ground of the decision was, that the goods after being attached by the sheriff were in the custody of the law, and that the defendant had *neither the custody nor the power to deliver.*

It does not appear whether the process required the sheriff to attach the specific goods, or whether, like our process of attachment, it run against the defendant's goods generally. Our own courts have endeavored to make a distinction in the two cases. It was held in *Foster* v. *Pettibone* (20 Barb., 350), contrary to what was said in *Stimpson* v. *Reynolds* (14 id., 506), that the sheriff is not responsible in trespass for taking the goods of a third person in pursuance of a writ of replevin, although he is liable in trespass for taking the goods of a third person on execution; because, in the former case, the writ specified the particular property, while in the latter case it goes only against the *defendant's* property. Whether upon principle any such distinction can be maintained, it is not now necessary to decide. As a general rule, the sheriff is a trespasser for levying upon the property of another person than the defendant in the process, although in many instances the action is regarded as a means of determining the title to property rather than an ordinary trespass. (GARDINER, J., in *People* v. *Schuyler*, 4 Comst., 183.) In *Clark* v. *Skinner* (20 Johns., 465), it was held that replevin would lie against the sheriff in favor of any person whose goods were taken by him under an execution against another. PLATT, J., said, that as to John Clark (the defendant in the execution), the goods were in the custody of the law, and therefore *irrepleviable,* but the law did not deny the remedy by replevin to any person whose goods are taken from his actual or constructive possession by a wrong-doer. He thought such

a remedy was indispensable for the protection of personal property. It was not doubted that an action of trespass or trover would lie in such a case. In *Marshall* v. *Davis* (1 Wend., 109), it was held that replevin would not lie for an illegal detention of property when the defendant came to the possession by delivery from a bailee having the special property, because trespass could not be maintained in such a case; for which the judge cites Vin. Abr., Trespass M. Pl., 11, where it is said, "If I bail goods to a man who gives or sells them to a stranger, and the stranger takes them without delivery, I shall have trespass; for by the gift or sale the property is not changed, *but by the taking;* but if the bailee delivers them to the stranger, I shall not have trespass." The judge added, that replevin was not the proper remedy in such a case, but detinue or trover. And in *Dunham* v. *Wyckoff* (3 Wend., 280), it was held that the owner of goods, with a right to reduce them to actual possession, may bring replevin against the officer who takes them, by virtue of an execution, out of the possession of the defendant in the execution; that the principle that goods taken on execution are in the *custody of the law*, and cannot be taken out of such custody, only applies as between the *defendant and the officer.*

After the Revised Statutes extended the action of replevin to embrace cases of the wrongful detention as well as the wrongful taking of property, some of the cases cited are of no importance, except so far as they all concur in holding that an action of trover against the sheriff is always an appropriate remedy when the officer detains the property of another, under color of an execution, whether taken from the defendant in the execution or from a bailee of the owner.

The sheriff, in all cases of an attachment or execution, is bound at his peril to take only the goods of the defendant; and, therefore, if he takes the goods of a third person, though the plaintiff assures him that they are the defendant's, he is liable. (*Saunderson* v. *Baker*, 2 Wm. Black., 834; *Ackworth* v. *Kemp*, 1 Doug., 40; *Samuel* v. *Duke*, 3 Mees. & Wels.,

622; Sewell's Sheriff, 465 [Law L., vol. 46}; Allen on Sheriff, 151.)

It is impossible, therefore, to reconcile the case of *Verrall* v. *Robinson* (*supra*) with the cases in our own courts, except when the process is special to the sheriff, as in the writ of replevin. It cannot have any application to the case at bar, for the goods were not in the custody of the law, except as between the parties to the attachment suit.

The sheriff is, in an important sense, the agent of the plaintiff in levying upon property claimed to belong to the defendant in the attachment suit. He may require an indemnity, but this does not protect him from an action of trespass by the owner of the property. (*People* v. *Schuyler, supra; Ball* v. *Pratt*, 36 Barb., 407.) In the case at bar, the sheriff seized the plaintiff's goods upon the ground that, as to creditors, they belonged to one Quinton Rogers, the defendant in the attachment suit. He could not justify the seizure as against the plaintiff, except by bringing forward the creditors and establishing the alleged fraud. (*Rinchey* v. *Stryker*, 28 N. Y., 45.) Upon what principle, then, can the defendant rely upon the sheriff's levy to withhold the goods from the plaintiff? Is he in a better position than the sheriff himself? Suppose the sheriff had taken the goods into his own custody? He could not detain them from the plaintiff, on the ground which is the foundation of the defense in this action.

It is no defense to say that somebody else has the interest in the property. In *Caunce* v. *Spanton* (7 Mann. & Gr., 903), the defendant refused to deliver up a cart standing upon his premises, on the ground that one Bartlett was part owner, and had given the defendant an indemnity. But the court overruled the defense, and the plaintiff recovered. I think no case can be found where such a defense has been deemed sufficient to justify a refusal to deliver up the property on demand of the rightful owner. If the defendant in this case may refuse to deliver the property to the plaintiff, he may also refuse to deliver it on demand of the sheriff; for we have seen that it is not in the custody of the law as to the plaintiff or his bailee. He may therefore retain it for an indefi-

nite time, merely because there is a controversy as to the title, if the excuse is good for anything. But in *Pattison* v. *Robinson* (5 Maul. & Sel., 105), the defendant, because of a dispute as to the title of the goods, declared that he would not deliver them to any one, which is very much the position taken by the defendant here, unless he holds on to them for the benefit of the sheriff. The court held, in that case, that he could not take that position, but was liable in damage to the true owner.

We have seen that the defendant was in possession of the property at the time of the demand, and had the power to comply with it, notwithstanding the levy. Without doubt, upon demand of the owner, he was bound to give up the property, or at least he could not refuse the demand any more than the sheriff could if the property had been delivered to him by the defendant. I may add that the defendant had, at the time of the levy, only a possessory interest in the goods limited by the terms of his contract, but this was enough to make the sheriff a trespasser even as against him. (Edwards on Bailments, 92.)

What is there, then, upon which to predicate the defense in this action? It is said that the bailee is not responsible when his refusal to deliver up property to the true owner is a *qualified* one. He may not know the state of the title, and may not wish to make himself a party to the litigation by doing any act which would subject him to an action by the true owner. If such a defense is allowable in this case, it would be a sufficient answer to say that the defendant did not put himself upon any such ground of refusal. His refusal was absolute, and he asked for no time to make inquiries as to the title. If he had taken any such position at the trial, it is quite probable the question would have been submitted to the jury, as to what the defendant intended by what he said. It is sufficient to say that, without explanation, his refusal to deliver up the property on demand is evidence of a conversion. And we have seen that a statement that somebody else owned the property does not qualify the refusal. No such doctrine can be admitted without overturning well

settled principles. It is not admitted in the case of a custodian of moneys claimed by different parties; nor can the sheriff even file a bill of interpleader against a third person and the plaintiff in the execution to have them settle the right to the property as between themselves. (*Shaw* v. *Coster*, 8 Paige, 339.) The chancellor says, with great force, that it would be contrary to every principle of justice to permit a sheriff to seize property claimed by a third person under an execution against the judgment debtor and then compel such third person to litigate the question with the creditors, instead of trying it at law against the sheriff himself, as the wrong-doer.

It is stated in 2 Phillips' Ev., 226, that a demand and refusal is only evidence of a conversion, and before it is entitled to any weight whatever it must be proved that the party making the refusal had it in his power to deliver up the article demanded. And that *where qualified refusal, if the grounds for not delivering the articles are reasonable*, will not amount to a conversion; as when the party making the refusal is ignorant who is the real owner, and requires to be satisfied respecting the ownership. "But when the defendant is proved to be in possession of the plaintiff's goods, and, on these being demanded, gives an unqualified refusal, he will be guilty of a tortious conversion, unless he can establish an adverse right to the immediate possession." It is very evident that such a doctrine should be admitted with great caution, and cannot, with propriety, be invoked to justify the bailee in withholding possession for an indefinite time, in order to satisfy himself as to the ownership. It has been decided, in some cases, that the defendant may withhold immediate delivery to give him time to satisfy his honest doubts. One case is that of *Solomons* v. *Dawes* (1 Esp. N. P. C., 83), where satisfaction was required respecting the authority of the attorney demanding the property. If, however, any such excuse is made by the defendant for not complying with the demand immediately, it must, of necessity, be a fact to be submitted to the jury, whether it was offered in good faith and not for the purpose of availing himself of it, to

deprive the owner of his rights. And it would, of necessity, be a question (perhaps for the jury to decide) what was a reasonable delay, in the particular case. *But such a request is not a refusal to give up the property*, but for time to consider. In the case at bar there was an absolute refusal to give up the property either at the time of demand or at any future time. We have been referred to *Mount* v. *Derrick* (5 Hill, 455). That case would, perhaps, be in point if the defendant had been the servant of the sheriff, or if the goods had been in the custody of the law and in charge of the defendant. It has no application to this case.

But it is said that the property was still upon the farm of the defendant where the plaintiff had left it, and the plaintiff could, if he had seen fit, have taken it, whereas he *required the defendant to do an act*, that is, deliver it, which would have made the defendant liable to the sheriff unless he could show the creditors of Quinton Rogers had not the right to the property. It is supposed that the law will not require the defendant to take any such responsibility. No authorities are cited in support of this proposition; but perhaps it may receive some sanction from analogous cases. It has been held that a defendant cannot be made liable either in trespass, or in any other form of action, for simply receiving goods of another, wrongfully delivered to him by the person in actual possession, unless he afterward does some act *amounting to a conversion* or *asportation*. (1 Smith L. C., 488; *Dudley* v. *Hawley*, 40 Barb., 398.) This rule of protection would, perhaps, allow the defendant in this case to remain passive and neutral; but he could not *refuse* to give up the goods to either party without taking upon himself the responsibility of showing title in the other. It is a mistake to suppose that this rule of protection goes so far as to exonerate the bailee from making a constructive delivery of the property. He must put the property in condition so as to allow the owner to take it. Suppose the property had been locked up in the defendant's barn, could he refuse to open his doors to the plaintiff? Clearly not, unless we allow him, under pretense of neutrality, not only to put his hand

on the plaintiff's property, but to keep it on when the plaintiff calls for it.

I apprehend the court below erred in allowing the defendant the position of an innocent custodian of the property. The property was on the defendant's premises. His duty was plain. He could not refuse the plaintiff's demand, for it did not necessarily call upon him to go into the field and aid the plaintiff in securing the property. Instead of refusing the demand, he should have told the plaintiff that if he took it, he must take it upon his own responsibility.

A bailee, who sets up the title of another, does so at his peril. By retaining the goods, he makes himself a party to the controversy, and must stand or fall by his title. (Lord TENTERDEN, Ch. J., in *Wilson* v. *Anderson*, 1 Barn. & Ad., 456.) LITTLEDALE, J., said, in the same case, that a bailee has no other title except that which the bailor had. "The defendant (he says) rested his right to retain the goods on the rights of the bailor, who had no rights whatever. There was an unqualified refusal, and that is evidence of conversion, unless the party refusing can show an adverse right to the immediate possession." The bailee in that case merely said that "he would not part with the goods without Captain Mundell (the bailor's) directions." In *Holbrook* v. *Wright* (24 Wend., 169), the partner of the bailee refused to deliver up goods to the owner, because, he said, he did not feel authorized to do so in the absence of his partner. On the trial, the defendant claimed a lien on the goods for storage. The judge charged the jury that a *sufficient demand had been made*, and that the defendant, not having claimed a lien for storage at the time of the demand, could not set it up as a bar to the action. This charge was held to be correct, and a new trial denied. If, however, the bailee answer that he is ready to deliver at the proper place, or as soon as he has made some reasonable inquiry as to the evidence of the title, and his excuse is made in good faith, he is not, it seems, guilty of conversion. (*Dunlap* v. *Hunting*, 2 Denio, 643; *Green* v. *Dunn*, 3 Camp., 215, note; COWEN, J., in *Holbrook* v. *Wright*, 24 Wend., 176, 177.)

In the case at bar, the legal effect of the defendant's refusal to give up the property was a refusal to allow the plaintiff to go upon his premises to take it. It implied that the owner could not have the property, because it was attached. If the defendant could excuse himself from taking part in making an actual delivery of the property, he could not refuse to give it up to the owner by at least a constructive delivery.

The order of the General Term should be reversed, and a new trial denied.

Order reversed.