### B. W. ROBERTS v. YARBORO & WIMBERLY.

1. CONSTRUCTION OF STATUTES.—When the enacting clause in a statute is general in its terms and objects, and a *proviso* is afterwards introduced, such proviso is construed strictly.

2. TESTIMONY OF PARTIES TO SUIT.—A plaintiff may be admitted to

29

testify to declarations of a deceased partner of the defendant, where suit had been brought against the firm, and one of the parties died pending the suit, and his representatives were not made parties.

3. EXCEPTIONS IN STATUTE.—The exceptions (Pas. Dig., art. 6827) excluding certain parties from testifying on account of interest will not be extended by implication.

4. BAILMENT—CONVERSION.—A refusal by the bailee to deliver goods on demand of the owner, unless on payment of certain claims of the bailor or bailee, inconsistent with the plaintiff's title, would be equivalent to an absolute refusal, and would amount to a conversion.

5. A bailee cannot relieve himself from responsibility to the owner by redelivery to his bailor, after demand and notification by the owner.

APPEAL from Smith. Tried below before the Hon. Z. Norton.

The facts sufficiently appear in the opinion.

*John L. Henry,* for appellant.

*F. M. Hays,* for appellee.

GOULD, ASSOCIATE JUSTICE.—The alleged conversion by appellees of five bales of cotton claimed by appellant as his property gave rise to this suit. The defense relied on was that the defendants received the cotton as bailees of one D. D. Wood, who deposited it with them subject to his order. That plaintiff and Wood formed a partnership in 1869, under a written agreement providing that they should share the crop equally, and should settle all of their indebtedness to each other out of the crops. That Wood represented that plaintiff was indebted to him in the sum of four or five hundred dollars, and that the cotton was therefore his; that they took the cotton for the purpose of securing a claim due them by Wood for goods to carry on the partnership firm, and that Wood having paid that claim and demanded the cotton, they had returned it to him in ignorance of plaintiff's asserted right. There was no controversy as to the fact that the five bales were a part of the crop raised under the partnership agreement; but the evidence was conflicting as to the state of open accounts be-

tween Wood and Roberts, each claiming a balance. As the
case will be reversed for other errors, it is not proposed to
comment on the evidence or to express an opinion as to its
sufficiency to support the verdict.

Pending the suit, Yarboro, one of the defendants, died,
and the court proceeded to trial against Wimberly as sur-
viving partner, without making Yarboro's representatives
parties.

On the trial the court refused to allow the plaintiff to
testify as to statements and promises alleged to have been
made by the deceased; and this ruling is fairly presented
for revision by bill of exceptions and assignment of errors.

The statute (Pas. Dig., art. 6826, 6827) is as follows:

"1. In the courts of this State there shall be no exclu-
ion of any witness on account of color, nor in civil actions,
because he is a party to or interested in the issues tried."

"2. In actions by or against executors, administrators,
or guardians, in which judgment may be rendered for or
against them, neither party shall be allowed to testify
against the other, or any transaction with or statement by
the testator, intestate, or ward, unless called to testify
thereto by the opposite party, or required to testify thereto
by the court."

The executor or administrator of Yarboro was not a party
to this suit, and the prohibition, taken literally, does not
support the ruling of the court. There is no ambiguity in
the wording of the statute, nor can there be said to be any
doubt arising out of the language of the law as to the in-
tention of the Legislature in its enactment. "It is not for
the court to say, where the language of a statute is clear,
that it shall be so construed as to embrace cases because
no good reason can be assigned why they were excluded
from its provisions." (Denn v. Reid, 10 Pet. 526, and see
Potter's Dwarris on Statutes, 143–146. If, however, we
look to the reason of the law, it will be difficult to pro-
nounce that it applies as fully to a surviving partner as it

does to executors, administrators, or guardians. It is well suggested in the brief of appellant that the surviving partner is himself interested in the suit, and has a stimulus to activity and vigilance which is ordinarily wanting in administrators and guardians. For aught that appears, the object of the exception is to protect estates and lands, because of the fact that they are represented imperfectly by agents ordinarily appointed by the law.

Even if it were admitted that the reason of the law applies with full force to this case, and the attempt be made to extend the statute by construction, so as to embrace surviving partners, it cannot be accomplished without unsettling settled rules of construction. In Tyson *v.* Britton, 6 Tex., 224, C. J. Hemphill says: "The Legislature has prescribed a general rule, with special disabilities or privileges, and these cannot be enlarged or extended to objects not embraced in the exception by mere implication or from parity of reason." To the same effect is the language of Judge Story, in United States *v.* Dickson, 15 Pet., 165: "When the enacting clause is general in its language and objects, and a proviso is afterward introduced, that proviso is construed strictly, and takes no case out of the enacting clause which does not fall fully within its terms." The general rule is prescribed by the statute that no witness shall be excluded because he is a party to or interested in the suit. The second section is in substance a proviso excepting parties in certain actions from the operation of the rule. The rule as established extends a privilege to parties, while the exception operates to curtail that privilege or right, and should not therefore be extended by construction.

We conclude that the court erred in excluding the evidence offered as to the declarations and promises of the deceased partner.

It is proper that we should notice another question which will necessarily again arise on the trial below. It

was claimed on behalf of defendants that they were discharged by reason of having redelivered the cotton to Wood, their bailor. The charge of the court was to the effect that such redelivery would exonerate defendants from liability, " provided there was no collusion with him, (Wood,) whereby some of plaintiff's rights were defeated.

Whatever may have once been the rule, it is believed to be now settled that the bailee can never be in a better situation than his bailor; and if the latter has no title, the real owner is entitled to recover his property, in whose hands soever it may be found. (Story on Bailments, sec. 130; Edws. on Bailments, 88; Wilson *v.* Anderton, 1 Barn. & Adolph., 449; King *v.* Richards, 6 Whart., 418; Nelson *v.* King, 25 Tex., 663.)

The bailee can protect himself against his bailor by showing that he has delivered possession, after demand, to the true owner. (Edws. on Bailments, 84; King *v.* Richards, *supra;* Rogers *v.* Weir, 34 N. Y., 463.)

The converse of this proposition is that he cannot refuse to deliver possession to the true owner who demands it of him, and of course, being bound to deliver to the true owner, cannot excuse himself by subsequent redelivery to his bailor. An unqualified refusal to deliver is a conversion. (Wilson *v.* Anderson, *supra.*)

It seems that a qualified refusal, in order to procure reasonable time to investigate the rights of the parties, if made in good faith, would not be a conversion. (Rogers *v.* Weir, *supra.*) But a refusal, unless certain claims of the bailor or bailee inconsistent with plaintiff's title were first paid, would be equivalent to an absolute refusal, and would amount to a conversion, after which the true owner's right of action cannot be defeated by redelivery to the bailor.

The right of a dignitary to protect himself by redelivery to his bailor is thus stated by Chilton, in Patterson *v.* Gaston, 17 Ala., 223: "If the bailor have the temporary

possession of property, holding the same as the property of the bailee, and asserting no title in himself, and in good faith, in fulfillment of the terms of the bailment, as expressed by the parties or implied by law, restore the property to the bailee before he is notified that the true owner will look to him for it, no action will be against him, for he has only done his duty." This falls far short of authorizing redelivery after demand; nor does it cover a case where the bailee holds or delivers possession for his own profit and not gratuitously.

The judgment is reversed and the cause remanded.

REVERSED AND REMANDED.