LARS SORENSEN ET AL. V. ELLEN SORENSEN.

FILED NOVEMBER 17, 1898.     No. 8398.

| 56 | 729 |
| f61 | 720 |
| 61 | 721 |

1. **Competency of Witnesses.** Under our system of jurisprudence every person is *prima facie* a competent witness in all cases, both civil and criminal.

2. ———: **EVIDENCE.** The incompetency of one as a witness, or the incompetency of his evidence, must be found in express law and not based on strict or technical construction. If there is reasonable doubt, the witness and the evidence are competent.

3. ———: ———: **TRANSACTIONS WITH PERSON DECEASED.** In a probate contest in the district court between an alleged widow and a nephew—an alleged heir at law—of an intestate for the right to nominate his administrator, such widow was permitted to testify to a conversation between herself and the deceased, constituting a present verbal contract of marriage, or common-law marriage between them. *Held,* That such evidence in said proceeding, the nature and the effects of the judgment thereof considered, is made incompetent by the express provision of section 329 of the Code of Civil Procedure.

ERROR from the district court of Valley county. Tried below before THOMPSON, J. *Reversed.*

The opinion contains a statement of the case.

*A. M. Robbins, J. W. Deweese,* and *Herman Westover,* for plaintiffs in error:

Defendant in error is not a competent witness to tes-

tify to a verbal contract of marriage between herself and Hans C. Sorensen, deceased. (Code of Civil Procedure, sec. 329; *Wylie v. Charlton*, 43 Neb. 840; *Denison v. Denison*, 35 Md. 361; *Redgrave v. Redgrave*, 38 Md. 93; *Kimball v. Kimball*, 16 Mich. 211; *Powell v. Powell*, 114 Ill. 329; *Cole v. Cole*, 153 Ill. 589; *Sharmer v. McIntosh*, 43 Neb. 516; *Ransom v. Schmela*, 13 Neb. 77; *Kroh v. Heins*, 48 Neb. 692; *Davis v. Davis*, 26 Cal. 37.)

The testimony of defendant in error was not sufficient to establish a common law marriage. (*Van Tuyl v. Van Tuyl*, 57 Barb. [N. Y.] 235; *Letters v. Cady*, 10 Cal. 533; *Clancy v. Clancy*, 33 N. W. Rep. [Mich.] 889; *State v. Walker*, 13 Pac. Rep. [Kan.] 282; *Stoltz v. Doering*, 112 Ill. 240; *Olson v. Peterson*, 33 Neb. 358; *Cross v. Cross*, 21 N. W. Rep. [Mich.] 310; *Kilburn v. Kilburn*, 89 Cal. 50; *Duncan v. Duncan*, 10 O. St. 181; *Cheney v. Arnold*, 15 N. Y. 345; *Terry v. White*, 59 N. W. Rep. [Minn.] 1013; *Williams v. Williams*, 46 Wis. 464; *Harbeck v. Harbeck*, 102 N. Y. 714; *Hebblethwaite v. Hepworth*, 98 Ill. 132; *Port v. Port*, 70 Ill. 484; *Cartwright v. McGown*, 121 Ill. 402; *Yardley's Estate*, 75 Pa. St. 207; *McKenna v. McKenna*, 73 Ill. App. 64; *Sharon v. Sharon*, 79 Cal. 670; *Commonwealth v. Stump*, 53 Pa. St. 136; *Peck v. Peck*, 12 R. I. 488; *Calef v. Calef*, 54 Me. 366; *Orme v. Orme*, 2 Add. Ecc. [Eng.] 382; *Foster v. Foster*, 1 Hag. Ecc. [Eng.] 144; *Cannon v. United States*, 116 U. S. 74.)

*A. Norman, John Wall, Charles A. Munn*, and *Munn & Hall, contra:*

Error cannot be predicated upon the admission of incompetent testimony received without objection, and in a case tried to the court without a jury the admission of incompetent testimony is not ground for reversing a judgment. The evidence admitted without objection was sufficient to sustain the verdict. (*Whipple v. Fowler*, 41 Neb. 681; *Willard v. Foster*, 24 Neb. 213; *Bilby v. Townsend*, 29 Neb. 220; *Western Union Telegraph Co. v. Lowrey*, 32 Neb. 738; *Wheeler v. Van Sickle*, 37 Neb. 651; *Catron*

*v. Shepherd*, 8 Neb. 317; *Clough v. State*, 7 Neb. 353; *Palmer v. Witcherly*, 15 Neb. 98; *Missouri P. R. Co. v. Vandeventer*, 26 Neb. 222; *Richardson v. Doty*, 25 Neb. 420; *Parish v. McNeal*, 36 Neb. 727; *Bartlett v. Bartlett*, 15 Neb. 593.)

Defendant in error's testimony as to her marriage was properly admitted in evidence. (*Wamsley v. Crook*, 3 Neb. 344; *Eisenlord v. Clum*, 126 N. Y. 552; *Hendricks v. Kelly*, 64 Ala. 391; *United States v. Dickson*, 15 Pet. [U. S.] 141; *Crimmins v. Crimmins*, 10 Atl. Rep. [N. J.] 801; *Greenawalt v. McEnelley*, 85 Pa. St. 352; *Smith v. Smith*, 19 Atl. Rep. [N. J.] 255; *Shaffer v. Richardson*, 27 Ind. 122; *Hamlyn v. Nesbit*, 37 Ind. 293; *Key v. Jones*, 52 Ala. 247; *Alabama Gold Life Ins. Co. v. Sledge*, 62 Ala. 569.)

The evidence was sufficient to establish a common law marriage. (1 Bishop, Marriage & Divorce [6th ed.] secs. 228, 249, 253, 283, 457; Stewart, Marriage & Divorce secs. 53, 84, 87; *Haggin v. Haggin*, 35 Neb. 379; *Gibson v. Gibson*, 24 Neb. 417; *Goodrich v. Cushman*, 34 Neb. 461; *Bailey v. State*, 36 Neb. 808.)

*E. M. Coffin*, also for defendant in error.

RAGAN, C.

Hans C. Sorensen died intestate February 3, 1895, leaving both real and personal property situate in Valley county, of which he was an inhabitant. Lars Sorensen and others, children of a deceased brother and sister of Hans C. Sorensen, made application to the county court for letters of administration of the estate of said Hans C. Sorensen, alleging that Hans had died intestate, leaving no widow nor issue, and that they, his nephews and nieces, were his next of kin and only heirs at law. A Mrs. Ellen Sorensen, or Ferguson, appeared in that proceeding and alleged that she was the widow of Hans C. Sorensen, deceased, and claimed the right to nominate an administrator. The result of the proceeding in the county court was a finding and judgment that Mrs. Ellen Sorensen, who will hereinafter be called Mrs. Fer-

guson, had never been married to Hans C. Sorensen, deceased, and therefore was not his widow. From this judgment Mrs. Ferguson prosecuted an appeal to the district court, where by consent a trial was had to the court without a jury, which resulted in a finding and judgment that Mrs. Ferguson had been lawfully married to Hans C. Sorensen in October previous to his death; that she was his widow and entitled to name an administrator for his estate. To review this judgment Lars Sorensen and others have filed in this court a petition in error.

1. It appears from the record that Hans C. Sorensen lived for a number of years prior to his death in Ord, Nebraska; that he was a bachelor,—lived alone, doing his own housekeeping. Mrs. Ferguson was a widow, and lived in the same town and, if not on the same block, very close to where Hans C. Sorensen lived. The two parties had been quite well acquainted for a number of years. Mrs. Ferguson was a poor woman, and, it seems, did Sorensen's laundry work, and occasionally cleaned house for him. On the trial in the district court she testified that about the middle of October, 1894, while she was at the house of Sorensen, he made a verbal proposition of marriage to her, which she then and there accepted; that she and Sorensen then and there agreed henceforth to be husband and wife to one another. Mrs. Ferguson also testified that after this verbal marriage contract between her and Sorensen, and in pursuance thereof, they had sexual intercourse, the result of which was a son born to her. She further testified that it was agreed between her and Sorensen at the time of their marriage that it should be kept secret for an indefinite time. The marriage was kept secret. The record contains no evidence of either Sorensen or Mrs. Ferguson having ever told or claimed to any one that they were married. At no time or place did either one of them introduce, speak of, or hold out the other as husband or wife. The parties did not cohabit together after their

marriage, but each continued to occupy their respective places of residence as before. No writing, note, memorandum, or verbal acknowledgment or statement of this marriage appears to have been made by either of the parties thereto. It will thus be seen that the finding and judgment of the district court, that Mrs. Ferguson and Hans C. Sorensen were lawfully married, that she was his widow, and that her child was his lawful heir, depend for support upon her testimony as to the verbal contract of marriage entered into between her and Sorensen in the middle of October, and the sexual intercourse of the parties subsequent to, and in pursuance of, such marriage contract. Was the evidence of Mrs. Ferguson in this respect competent for consideration by the district court in deciding the question of fact, of the marriage, presented to him? Section 328 of the Code of Civil Procedure, among other things, provides: "Every human being of sufficient capacity to understand the obligation of an oath is a competent witness in all cases, civil and criminal, except as otherwise herein declared." The statute then enumerates what persons shall be incompetent to testify. Mrs. Ferguson does not belong to the class of persons rendered incompetent by this section of the statute. Section 329 of the Code provides that "No person having a direct legal interest in the result of any civil action or proceeding, when the adverse party is the representative of the deceased person, shall be permitted to testify to any transaction or conversation had between the deceased person and the witness unless," etc. From the section of the Code first quoted it is apparent that every person is *prima facie* a competent witness in any case, civil or criminal; and to disqualify a witness from testifying by reason of incompetency he must fall within some one or more of the exceptions expressly provided by statute. In other words, the reason for disqualifying the witness must be found in express provisions of law, and the witness is not to be disqualified by a strained or strict construction. (*Eisenlord v.*

*Clum*, 27 N. E. Rep. [N. Y.] 1024; *Roberts v. Yarboro*, 41 Tex. 449; *United States v. Dickson*, 15 Pet. [U. S.] 165; *Markham v. Carothers*, 47 Tex. 21. Mrs. Ferguson did not belong to either one of the five classes of persons declared incompetent to testify by the provisions of said section 328 of the Code. Was the testimony given by her rendered incompetent by said section 329? Let us analyze this section of the Code. To render her testimony incompetent she must have testified to a transaction or a conversation had between herself and the deceased, the testimony must have been given in a civil action or proceeding, the adverse party to this action or proceeding must have been the representative of the deceased, and the witness must have had a direct legal interest in the result of the action or proceeding. The proceeding in which Mrs. Ferguson was permitted to testify was perhaps, technically speaking, not a civil action, but a probate proceeding. It was, however, a civil, and not a criminal, proceeding, and recognized as a civil proceeding by section 17, article 6, of our constitution. The adverse party in the proceeding appeared in the record claiming to be the heir at law of the deceased. True, this alleged heir was not the legal representative of the deceased. He was neither the executor nor the administrator of the deceased. But the term "representative," in this section of the Code, is not limited to legal representatives, but applies to any person or party who has succeeded to the rights of the deceased, whether by purchase, descent, or operation of law. (*Wamsley v. Crook*, 3 Neb. 344; *Kroh v. Heins*, 48 Neb. 691.) The heir at law then in the proceeding in which Mrs. Ferguson testified appeared on the record as the representative of the deceased. The word "result," found in this section of the Code, means the judgment rendered or final order made in the proceeding.

Thus far it appears that Mrs. Ferguson testified to a transaction and conversation had between her and the deceased; gave this testimony in a civil proceeding in

which her adversary appeared of record as the representative of the deceased. The remaining question is, did she at the time she gave this testimony have a direct legal interest in the result of that proceeding? To render her testimony incompetent it is not enough that she was interested in the result, but such interest must have been an interest or a right or an obligation recognized by law, and such an interest or right as the final judgment in the proceeding would confirm to or deny her, or her interest must have been such as would enable this judgment to be used in another action in support of or against her alleged right or interest. (*Eisenlord v. Clum,* 27 N. E. Rep. [N. Y.] 1024, and cases there cited.) That the witness may be biased or prejudiced in favor of one litigant or the other does not invest her with an interest, within the meaning of this section of the Code. The true test is, as it was at common law, will the witness gain or lose by the direct legal operation and effect of the judgment or final order rendered in the proceeding in which the testimony is offered, or will the judgment pronounced in that proceeding be legal evidence for or against the witness in some other action? (1 Greenleaf, Evidence sec. 390.) If the direct effect of the judgment rendered in the proceeding would be to divest the decedent's representative of real estate and vest it in the husband of the witness, then her testimony would be incompetent. (*Wylie v. Charlton,* 43 Neb. 840), because the moment her husband became invested with the title to real estate the witness would become entitled to an inchoate right of dower therein. (*Butler v. Fitzgerald,* 43 Neb. 192.) If the effect of the judgment or final order would make her liable for the costs in the proceeding, then her testimony would be incompetent. (*Ransom v. Schmela,* 13 Neb. 73.) This right or interest must have been a direct and approximate one, not an uncertain or possible interest. For example, if the effect of the judgment might be to divest the decedent's representative of property and vest the title thereto in the child of the witness, then, though by

statute she might inherit from the child in case it died, her evidence would not be incompetent, as her interest there would be an indirect and not a direct present one. If Mrs. Ferguson was the widow of Hans C. Sorensen, then, by reason of the laws of this state, at the moment of his death she became entitled to dower in all the real estate of which he was seized at any time during coverture, and became entitled to the ownership and possession of a certain share of the personal property left by the deceased. This right to dower and personal property of the deceased gave her a direct legal interest in the result of the proceeding on trial. The only issue on trial in the district court was whether Mrs. Ferguson and Hans C. Sorensen were husband and wife,—whether she was his widow; and the judgment of the district court that she was his widow embraced a finding that she was lawfully married to him. This judgment then established Mrs. Ferguson's status as the widow of Hans C. Sorensen, and this status once established by operation of law, she became entitled to dower out of his estate, and the judgment rendered in this proceeding would be competent evidence for her in a suit for dower, where the defense of the nephews and nieces was that she was not his widow, as in the proceeding for dower the parties would be the same as here, and in that proceeding the only issue would be whether or not she was Sorensen's widow,—in other words, whether she was married to him, as she claimed, in October, 1894. We are therefore constrained to hold that the testimony given by Mrs. Ferguson as to her verbal contracts, conversations, and transactions with the deceased, which the district court held established a valid common law marriage between the witness and the deceased, was incompetent.

2. We have not been referred to, nor have we been able to find, any case where the precise question under consideration here has been decided, under a statute like ours, in such a proceeding as this. That the testimony of Mrs. Ferguson was competent has been ably and in-

dustriously contended for by her counsel, and in defer-
ence to them, and in view of the importance of the ques-
tion presented, we have patiently examined all the cases
cited by them which they claim sustain their contention,
and in addition have examined a large number of others.
Some of these cases we shall now briefly review, and en-
deavor to show that they do not conflict with the con-
struction which we have placed upon section 329 of the
Code.

Roberts v. Yarboro, 41 Tex. 449, was a suit for conver-
sion against two copartners. Pending the suit one of the
partners died, the action proceeding against the surviv-
ing partner only, and it was held that the plaintiff might
testify to declarations of the deceased. The statute of
Texas prohibited a party to the suit from testifying to
a conversation or transaction with the deceased, where
the adversary was the executor, administrator, or guard-
ian of the deceased. The court gave the statute a literal
and strict interpretation, and held the testimony of the
plaintiff competent upon the ground that the deceased
party was not a party to the suit nor represented in the
suit by an administrator, executor, or guardian.

Markham v. Carothers, 47 Tex. 21, was an action of
ejectment brought by Carothers' administrator against
Rountree and Bowden. The parties made defendants
disclaimed all title in themselves, and Bowden, as guard-
ian for Irene Rountree, intervened in the action and
claimed title to half the property sued for in behalf of
his ward; and the court held that Rountree might testify
to conversations and transactions between himself and
Carothers' intestate. The decision was placed upon the
ground that after Rountree's disclaimer he was no longer
a party to the suit, and the statute only rendered the tes-
timony of witnesses incompetent who were parties to the
suit.

Eisenlord v. Clum, 27 N. E. Rep. [N. Y.] 1024, was an
ejectment suit brought by an alleged forced heir of the
deceased against persons who claimed to be the heirs at

law of the deceased, and it was held that the mother of the forced heir might testify to a common law marriage between herself and the plaintiff's father. The opinion is by Peckham, J., and is an able and exhaustive one; is a construction of section 829 of the Civil Code of New York, which is substantially section 329 of our Code, and the testimony of the mother was held admissible solely upon the ground that the judgment in the ejectment suit could not be used by the widow as evidence of her marriage with the deceased in a suit brought by her for dower in his lands. The case might be controlling and conclusive of the contention of Mrs. Ferguson's counsel here if their client had not been a party to the proceeding in which she testified.

*Cole v. Cole*, 38 N. E. Rep. [Ill.] 703, was a contest over the partition of real estate of which one George Cole had died seized. Cole was lawfully married to Emma Cole in England, lived with her for about a year, and then deserted her and came to Illinois, and there married Amelia Hahn, with whom he lived for about twelve years, until she obtained a divorce from him. Cole then went to Indiana, and there married Katherine Cole, and soon after died. Emma Cole, the English widow, claimed dower in his lands, and the Indiana widow also claimed to have been lawfully married to him and therefore entitled to dower in his lands. On the trial there was positive proof by other witnesses that Cole's English wife was living when he married Amelia Hahn, and the court held that Amelia Hahn was competent to testify that Cole admitted to her during the time she lived with him that he had not been divorced from his English wife. The case does not militate against the conclusion reached by us in the case at bar. If Cole's English widow was living when he married Amelia Hahn, then that marriage was absolutely void, and she had no interest, direct, legal, or otherwise, in the result of the suit on trial.

A statute of Missouri provided: "In actions where one of the original parties to the contract or cause of action in

issue and on trial is dead * * * the other party * * * shall not be admitted to testify in his own favor." (Revised Statutes of Missouri, sec. 8918.) William Green and Rebecca Green were married in Ireland. No children were born of the marriage. Green then deserted his wife, came to Missouri, and, representing himself to be single, was duly married to Victoria Rogers, by whom he had two children, and soon after died, leaving a will in and by which he devised to his Missouri widow a life interest in his real estate with the remainder over to his children. The Irish widow brought ejectment for the real estate against the Missouri widow and her children, and the court held that the Irish wife might testify to the marriage between herself and the testator. (*Green v. Green*, 28 S. W. Rep. [Mo.] 752, 1008.) The cause of action in issue and on trial in the ejectment suit was not the marriage contract to which the witness was permitted to testify. The decision of the court is an application of the rule of strict construction of a statute which renders a witness imcompetent to testify. Such also is the case of *Brandon v. Dawson*, 51 Mo. App. 237.

In *Re Drinkhouse's Estate*, 24 Atl. Rep. [Pa.] 1083, the holding was that on a claim of children to a share in the estate as grandchildren of the decedent their mother was a competent witness to prove the fact of her marriage to the decedent's son, the father of the grandchildren. The case was an appeal from an order of the orphan's court distributing the estate of William Drinkhouse, deceased. It does not appear that the witness who testified to a marriage with William's son, Joseph W., had any direct legal interest in the result of that proceeding.

A statute of New Jersey provided: "No party shall be sworn in any case when the opposite party * * * sues or is sued in a representative capacity." (Revised Statutes, p. 378, ch. 1, sec. 3.) In *Colfax v. Colfax*, 32 N. J. Eq. 206, a son filed a bill for specific performance of a contract which he alleged he had made with his father in his lifetime for the con-

veyance to the son of certain real· estate. His brothers and sisters, as his father's heirs at law, were made defendants. The court held that the heirs made defendants were sued in a representative capacity within the meaning of the statute, and that the son was an incompetent witness to testify to the contract made between him and his deceased father. The New Jersey statute just quoted was amended by the legislature of that state in 1880 so as to read: "In all civil actions * * * any party thereto may be sworn and examined as a witness, notwithstanding any party thereto * * * may sue or be sued in a representative capacity, provided * * * that this supplement shall not extend so as to permit testimony to be given to any transaction with or statement made by any testator or intestate represented in such action." (General Statutes, vol. 2, p. 1407, sec. 1.)

In *Palmateer v. Tilton*, 40 N. J. Eq. 555, one William Harvey died, leaving a will in and by which he appointed one Abner Allen executor with power, it seems, to sell and dispose of the decedent's real estate. The executor made a contract with Palmateer in and by which he agreed to convey to him certain of the decedent's real estate, and died before the. execution of the contract. Palmateer then brought suit for specific performance against Harvey's administrator with the will annexed, and the court held that Palmateer might testify to the contract between himself and the deceased executor of Harvey. The court based its decision upon the proposition that the statute only forbade the witness to testify to statements made by a "testator or intestate;" that the statement made by Allen, executor, was not clearly within the rule.

In *Hodge v. Coriell*, 44 N. J. L. 456, Hodge brought replevin against Coriell. The latter pleaded *non cepit*, and property in himself as administrator of J. T., deceased, and the court held, construing the statute of 1880 just quoted, that it was competent for Hodge to testify that J. T., deceased, admitted that the property in ques-

tion did not belong to him, but to a person from whom Hodge derived title. The court based its decision upon the proposition that Coriell was sued in his individual, not in his representative, capacity; that he did not change his status by pleading that he was entitled to the property in his character of administrator.

In *Crimmins v. Crimmins,* 10 Atl. Rep. [N. J.] 800, a widow brought suit against the heirs at law of her deceased husband to set aside a deed made by her husband in his lifetime and in the execution of which deed the widow alleged her husband had induced her to join by the practice of fraud and the exercise of undue influence; and the court held, construing this statute of New Jersey of 1880, quoted above, that the testimony of the widow as to the transactions and conversations between herself and husband was competent, basing its decision upon the ground that the heirs at law were not being sued as the representative of the deceased within the meaning of the statute.

In *Smith v. Smith,* 19 Atl. Rep. [N. J.] 255, it seems that Hezekiah B. Smith died testate, leaving a will in and by which he devised his property to certain trustees. Mrs. Smith, claiming to be his widow, brought an action against the devisees for dower. The defense was that Smith and Smith had never been married, and the court held that Mrs. Smith was competent to testify to the facts constituting a common law marriage between herself and Smith, deceased, and based its decision upon the ground that the defendants to the action were sued as devisees under the will of Smith, deceased, and not as executors and legal representatives.

*Ingersol v. McWillie,* 30 S. W. Rep. [Tex.] 56, was a contest between certain parties as to which had the right to administer upon the estate of a deceased, and the court held that the Texas statute relating to transactions with the decedent did not prohibit a woman from testifying to the fact of a marriage between herself and the deceased in such contest, none of the parties to the contest claiming to be heirs of the deceased.

*Shaffer v. Richardson*, 27 Ind. 122, was a suit by a widow against the administrator of her deceased husband to compel him to make distribution to her of her share of the decedent's personal estate. The administrator resisted the action on the ground that the widow had abandoned her husband during his lifetime, and at the time of his death was living in a state of adultery with another man. On this issue the court held that the widow was a competent witness to testify to the facts which tended to show that she did not abandon her husband and live in a state of adultery with another man, but that her husband deserted her, and believing him to be dead, she was publicly and formally married to another person. The statute in reference to the competency of this woman's testimony is not quoted in the opinion. But assuming it to be similar to our section 329 of the Code, we do not regard the case as an authority for the contention that Mrs. Ferguson was a competent witness in the case under consideration. In the Indiana case the marriage of the widow with Richardson was undisputed. The administrator resisted her claim to his property on the ground that she had abandoned her husband and at the time of his death was living in a state of adultery with another man. This defense was not admitted, and the burden was upon the administrator, of course, to show it, and when he introduced proof which tended to show those facts, then it was perfectly competent, by the express provisions of the statute, for the widow to testify in regard to the transactions between herself and husband about which the administrator had testified.

This concludes the review of all the cases cited by counsel for defendant in error in support of their contention that the testimony of Mrs. Ferguson to the fact of the marriage between herself and Hans C. Sorensen was competent, and our conclusion is that the authorities do not sustain the contention for which they are cited. We must not be understood as deciding in this case that

Mrs. Ferguson was not lawfully married to Hans C. Sorensen, for we make no such decision. What we decide, and all we decide, is that her testimony as to that marriage in this proceeding, she being a party thereto and having a direct legal interest in the result of such proceeding, was incompetent; and that since the finding and judgment of the court that Mrs. Ferguson and Hans C. Sorensen were married depend solely for support upon her testimony, the judgment must be and is reversed and the cause remanded to the district court.

REVERSED AND REMANDED.

NORVAL, J.

I concur in the judgment just rendered on the ground that the findings of the district court are not sustained by the evidence. I express no opinion upon the questions discussed in the foregoing opinion.