Mrs. Laura V. TRANTHAM et al.,
Appellants,

v.

E. F. ROPER et al., Appellees.

No. 6988.

Court of Civil Appeals of Texas.

Texarkana.

Nov. 26, 1957.

Rehearing Denied Dec. 31, 1957.

Paul B. Cox, Rusk, W. J. Garrett, Jacksonville, for appellants.

Wm. Emerson Stone, Jr., Jacksonville, for appellees.

CHADICK, Chief Justice.

This is a trespass to try title suit. The opinion of October 10, 1957, in which judgment of the trial court in this case was ordered reversed and the cause rendered for appellants is withdrawn, and upon further consideration, the trial court's judgment is affirmed.

In the year 1905, Sam Trantham and wife, Laura V. Trantham, moved upon and took possession of the J. W. Love and Abraham Scott Surveys in Cherokee County, comprising 237.2 acres of land, more or less. The evidence reflects that A. Zink was the record title owner of the land and on October 15, 1934, the Tranthams, husband and wife, executed and delivered to him the following instrument:

"Witnesseth: That we, Sam Thrantham and wife, Mrs. L. V. Thrantham are desirious of renting for the year 1935, beginning January 1st, 1935 and ending November 1st, 1935, the following described land and premises, laying and being situated in the County of Cherokee, State of Texas, to-wit:

"Being all of the J. W. Love Survey of Cherokee County, Texas, same being 106 acres; and all of the A. Scott Survey of said Cherokee County, Texas, same being 131.5 acres; and being the same land conveyed to A. Zink of San Jose, California by F. E. Mundie by deed dated October 16th, 1903, which said deed was duly recorded in the Deed Records of Cherokee County, Texas, to which said deed and the record thereof reference is here made for metes and bound description of said land;

"And whereas A. Zink of San Jose, California is the owner of said land and premises, and is desirous of renting the same for the above said year, beginning and ending as above set forth; and we, the said Sam Thrantham and wife, Mrs. L. V. Thrantham have, and do by these presents agree to rent of and from the said above A. Zink the above described land and premises for the year 1935, beginning and ending as above stated for the agreed mutual benefit of each of the undersigned on the following terms, to-wit: We, the said Sam Thrantham and wife, Mrs. L. V. Thrantham agree and hereby bind ourselves to pay over to the said A. Zink for the use of said land and for the above said time, one-third of all grain crops and a one-fourth of all cotton crops grown on said land; and we, the said Sam Thrantham and wife Mrs. L. V. Thrantham as further inducement and consideration for the renting to us of the above said premises for the year, 1935, ending as above stated, do hereby release, discharge and quit-claim unto the said A. Zink his heirs and assigns, all the rights, title, and estate in and to the property above described, which we have or may be entitled to by virtue of our past and present occupancy and use of said above land and premises; and bind ourselves our heirs and assigns to deliver the same over to the said A. Zink, his heirs and assigns on the termination of the above rent year in as good condition as it is now, excepting reasonable *deteriation* from *sue druing* the coming year.

"Witness our hands this the 15th day of October, A.D.1934, at Jacksonville, Texas.

> "Sam (His X) Thrantham
> Mrs. L. V. (X) Thrantham
> A Zink."

"Witness:

"J. T. Greenwood.

(Caption and notary acknowledgment omitted.)

After execution and delivery of the above instrument again in 1945 and 1951, written share-crop leases were made and delivered

by the Tranthams to A. Zink or his successors in title.

The trial court submitted eight special issues to the jury. The jury answered the first in the affirmative, thereby finding that the Tranthams had peaceable and adverse possession of the land for a period of 10 consecutive years prior to October 15, 1934, and subsequent to the year 1905. The jury's answer to Special Issue No. 2 established the fact that A. Zink did not represent to the Tranthams that the execution of the lease-quitclaim instrument dated October 15, 1934, would not affect their ownership and occupancy of the land. And as result of such answer under the instructions of the court, the jury did not answer the subsidiary Issues Nos. 3, 4 and 5 as to falsity, inducement and reliance. Special Issue No. 6 inquired if the Tranthams were under duress when they signed an instrument dated November 14, 1951, and the jury answered "No." Special Issues Nos. 7 and 8 were submitted contingent upon an answer to No. 6 being in the affirmative, and therefore, they were not answered. No objections or exceptions were made to the court's charge.

The jury found a limitation title matured in the Tranthams prior to October 15, 1934, but the trial judge nevertheless gave controlling effect to the jury finding that the lease-quitclaim, above set out, was not procured by fraud and held that by such instrument the Tranthams quitclaimed to A. Zink all right, title and estate they had in the land and rendered a take-nothing judgment against Mrs. Trantham and the heirs of Sam Trantham, appellants here, and adjudged the appellees to be owners of the fee simple title to the land.

The plaintiffs below, appellants here, being dissatisfied with the judgment of the trial court, have appealed and bring forward eight points of error.

 Appellants' 1st, 5th, 6th, 7th and 8th points are interrelated and may be disposed of in one discussion. In the opinion now withdrawn, full effect was not given to appellants' pleading of fraud and lack of consideration respecting the instrument of October 15, 1934, in the sense that it was overlooked that such pleading permitted the introduction of parol evidence to show the true consideration for the lease-quitclaim. It is well settled that under such pleadings parol testimony may be offered to show the real consideration. McFarland v. Shaw, Tex.Com.App., 45 S.W.2d 193. There is evidence in the record that in addition to the consideration recited in the instrument, the agreement was entered into by the parties to settle any question between them as to ownership of the land and to prevent litigation between them in that respect. It was held in Camoron v. Thurmond, 56 Tex. 22 and Russell v. Lemons, Tex.Civ.App., 205 S.W.2d 629, wr. ref., n.r.e., that a forbearance to sue is a sufficient consideration to support a contract. Under Rule 279, Vernon's Texas Rules of Civil Procedure, it must be assumed that the trial court found that a settlement of the title claims of the parties was the real consideration for the quitclaim deed, as such implications would support the judgment rendered. Appellants' 1st point is overruled.

The several additional points asserting the invalidity of the quitclaim deed, (5) because the consideration of the quitclaim as a matter of law is inadequate, (6) because the quitclaim was not effective to divest title, (7) because the quitclaim had no legal effect in law, and (8) because the quitclaim clause of the agreement was contractually dependent upon the entire instrument which was incapable of being performed by A. Zink, have been examined and it is thought that the defects asserted are not supported by the record and authority. These points are overruled.

 Appellants' 2nd and 3rd points complain of the admission in evidence of testimony of E. B. Lewis and W. B. Stone concerning the transactions that they, as notary or attorneys for A. Zink had with Sam Trantham prior to his death in securing the instruments which are

sought to be avoided. It is urged that admission in evidence of this testimony violated Article 3716, Vernon's Ann.Tex.Civ. St. ("Dead Man's Statute".) That statute is concerned with testimony of witnesses in actions by or against executors, administrators or guardians in which judgment may be rendered for or against them as such and extends to and includes all actions by or against the heirs or legal representatives of a decedent arising out of any transaction with such decedent. This statute has consistently been construed strictly and its terms are not to be extended by judicial construction to witnesses not definitely within its terms. Roberts v. Yarboro, 41 Tex. 449; Nimitz v. Holland, Tex.Civ.App., 217 S.W. 244; Ragsdale v. Ragsdale, 142 Tex. 476, 179 S.W.2d 291. In Lomax v. Marlow, Tex.Civ.App., 38 S.W. 228, and Saunders' Executors v. Weekes, Tex.Civ.App., 55 S.W. 33, it was held that the statute has no application to the agent of a party to the suit and does not prohibit them from testifying. It follows that Mr. Lewis and Mr. Stone, whether as notary, attorney, agent or employee of A. Zink or his successors in title, were competent to testify, the record reflecting that they are neither parties to the suit nor pecuniarily interested in or bound by its outcome, nor acting in any relationship prohibited from testifying by the statute. The points must be overruled.

Appellants' 4th point questions the sufficiency of the evidence to support Special Issue No. 2. Mrs. Laura V. Trantham, an appellant, and the witness by deposition to the fact relied upon by the appellants to make their case in the trial court, testified that A. Zink made fraudulent representations to the Tranthams to secure the lease-quitclaim agreement. The burden of proof by preponderance of the evidence rested upon the appellants to prove misrepresentation by A. Zink. The jury was the exclusive judge of the facts proved, the credibility of the witnesses, and the weight to be given the testimony, and as such was privileged to weigh the evi-

dence and determine Mrs. Trantham's credibility, etc., in the testimony she gave as a party to the suit. The testimony of Mr. E. B. Lewis, the various quitclaim and lease instrument, and the acknowledgment of them, are the only direct evidence supporting the jury's answer to Special Issue No. 2, however, it is thought that the jury in the exercise of its proper discretion could have from all the testimony concluded that the appellants had not discharged the burden of proof, and of course, might have elected not to give credence to Mrs. Trantham's testimony. Her testimony that she did not read the instrument before it was signed was directly contradicted by Mr. Lewis' evidence that he read it and explained it to her. Her testimony that Mr. Zink never made a claim to the land in question is contradicted by the testimony of the witness Obitz. Another strong circumstance the jury could have considered is that A. Zink was not present when the Tranthams signed the quitclaim instrument, and if he made the false representations attributed to him there was ample time after the representations were made and before they signed it, according to Mr. Lewis' testimony, for them to have the instrument and its effect fully explained to them, as Mr. Lewis testified he did. Coupled with the circumstances related, the jury could have and probably did consider evidence that the timber was cut from the land a few years subsequent to 1934, without the consent of or payment therefor to the Tranthams by one W. H. Brown, who purchased it from A. Zink. Too, there is evidence that Sam Trantham delivered rent money to C. E. Antle to be transmitted to Zink in California. From all of the circumstances, it cannot be said as a matter of law that there is insufficient evidence to support the jury's answer to Special Issue No. 2 and the point in that regard is respectfully overruled.

Having concluded that no error is shown by the record, this opinion is substituted for that of October 10, 1957, and the judgment of the trial court is affirmed.