George H. HALL

v.

**D'ORO BY CHRISTOPHER MICHAEL, INC., Michael Schutze, dba Intragold.**

**No. CA 3–78–1414–C.**

United States District Court,
N. D. Texas,
Dallas Division.

Aug. 21, 1979.

Jack D. Eades and W. B. West, III, Clark, West, Keller, Butler & Ellis, Dallas, Tex., for plaintiff.

Jonathan A. Pace, Pace, Chandler & Rickey, Dallas, Texas, for defendants.

## OPINION

WILLIAM M. TAYLOR, District Judge.

This is a diversity case under 28 U.S.C. § 1332. Plaintiff is a resident of Rhode Island. Defendant D'Oro by Christopher Michael, Inc. (D'Oro) is a Texas corporation with its principal place of business in Dallas, Dallas County, Texas. Defendant Michael Schutze resides in Dallas County, Texas. Defendants have not contested that $10,000 is in controversy and the Court finds that it is. It is therefore concluded that this Court has jurisdiction.

On August 4, 1977, Plaintiff was hired by Defendant Schutze d/b/a D'Oro by Christopher Michael to be Schutze's exclusive sales representative in the six New England states. On December 22, 1977, Defendant Schutze formed Defendant D'Oro which assumed the oral contract with Plaintiff. This oral contract provided for a sales commission to be paid to Plaintiff at the rate of ten percent (10%) on items fabricated of gold and fifteen percent (15%) on items fabricated of silver.

On January 1, 1978, Plaintiff's territory was expanded to include the states of New York and New Jersey and the cities of Washington, D.C., Baltimore, Maryland, and Philadelphia, Pennsylvania. This addition was terminated on June 30, 1978, and Plaintiff's sales territory reverted to the New England states.

Between August 4, 1977 and February 28, 1978, Plaintiff only earned commissions of $430.31.

Starting the next day, March 1, 1978, Plaintiff and Defendant D'Oro amended their agreement. First, Plaintiff was to be paid a commission of one percent (1%) on all sales of discontinued and overstock items that Defendant D'Oro sold under the trade name Intragold. This provision was also terminated by Defendant D'Oro by June 30, 1978. Second, a draw of $1,500 payable to Plaintiff on the 1st and 15th of the month was instituted.

■ Plaintiff claims that this draw was agreed to be salary. Defendant D'Oro claims that it was only an advance against commissions. Plaintiff bolsters his claim by pointing out that his business cards showed him to have the title of Vice-President of Defendant D'Oro, that Defendant Schutze sent him a letter "welcoming him to management," that he at times visited jewelry

manufacturers on behalf of D'Oro, and that he looked after the showroom in New York City that was opened during his tenure.

First, Plaintiff has not come forward with any corporate papers of Defendant D'Oro which show him to have ever been elected to any office of Defendant D'Oro. Second, Defendant Schutze very rationally explained that sales representatives such as Plaintiff were sometimes allowed to put such a title on their business cards in order to impress clients who would refuse to deal with a mere salesman, and that he had sent the letter to Plaintiff at Plaintiff's request to bolster his image. Third, Defendant Schutze agreed that at times he had asked Plaintiff to do things that would amount to corporate business but he also explained that he has asked other sales representatives to do such things which they have done and all, including Plaintiff, have been paid their expenses for doing so. Fourth, Defendant Schutze pointed out that the New York showroom was within Plaintiff's sales territory and convincingly testified that whenever a show was held, no matter where it was, that a few salesmen would come in early and set up the displays as a normal course of business.

In light of all of this and the dismal $430.31 sales commissions over the seven month period, the Court cannot believe that the $1,500 draw was other than an advance against commissions. Defendant D'Oro discontinued the draw in June of 1978.

By August 15, 1978, the Parties had had a sufficient falling out that Plaintiff quit as a sales representative. At that time he refused to give back a sample case full of gold and silver items worth $15,330. To this day, he has not returned the sample case. By his termination on August 15, 1978, Plaintiff had been paid by Defendants a total of $10,750.00 as advance commissions. Defendant D'Oro's credible testimony is that $6,260. was earned, all told, as commissions by Plaintiff and that all expenses submitted by Plaintiff had been paid to him. Plaintiff has tried to dispute this by trying to show that Defendants' bookkeeping was, and is, not as it should. The Court does not accept this contention in the face of the clear testimony of Defendant Schutze and the lack of other testimony on this point. Plaintiff engaged the services of an accountant who was allowed to go through the books and records of Defendant D'Oro as part of this discovery in this case. Plaintiff never called this potential witness to the stand so the only rational conclusion to be drawn is that the accountant could not dispute the Defendants' figures.

For these reasons, judgment will be rendered for Defendant D'Oro for the return of the $4,490 excess commission advanced to Plaintiff.

Defendant D'Oro has also asked for damages for Plaintiff's failure to return the sample case and samples contained within it. It has advanced two theories, express oral contract and conversion. Plaintiff denies an express oral contract and defends on the conversion theory on a "qualified refusal" theory under a line of Texas cases starting with *Roberts v. Yarboro,* 41 Tex. 449 (1874).

Defendant Schutze on behalf of Defendant D'Oro sent a telegram to Plaintiff on August 17, 1978, terminating Plaintiff and demanding return of the sample case before any settlement as to commission would be made. Plaintiff says that he refused to return the sample case and samples before an accounting was made to him of his commissions, on the advice of counsel. These would state an adequate "qualified refusal" case except that Plaintiff knew how little he had sold compared to his advances and had been told that the advances were being stopped principally because of this. The Court finds that Plaintiff has held the sample case and samples only on a pretext in order to attempt to lever money out of Defendants. The Court might have taken a different view had Plaintiff tendered the case and samples in his pleadings or at trial. But he did not even bring them to the trial to exhibit that they are intact.

Defendant has requested damages for this refusal to return the case and samples in the sum of $42,282. as lost profits and $15,330 as the value of the case and sam-

ples. Defendant Schutze testified that the value of the samples is $15,330. and that upon the refusal of Plaintiff to return the case and samples, Defendant D'Oro had to take other items out of stock and furnish them to Plaintiff's replacement for use as samples. Defendant Schutze also stated that the reasonable sale value of the items in the sample case would be $24,726. and that the average turn of inventory for Defendant D'Oro between the refusal to return and trial was four and one-half turns. So he computed the loss of profits to be ($24,726–$15,330) × 4½ = $42,282.

Based on Defendant Schutze's own testimony, the Court finds that there is insufficient proof of special damages, the loss of profits. Defendant Schutze testified at length as to the necessity of establishing Intragold in order to sell obsolete and slow-moving merchandise. He also testified that salesmen's samples had to be continually updated for the same purpose. But the list of samples checked out to Plaintiff that was produced at trial showed very little if any updating (there is some inconsistency in the testimony but the result is the same). It appears to the Court that some substantial portion of the samples in the possession of Plaintiff were obsolete as of August 17, 1978, or without as great a value as the average item in Defendant D'Oro's stock. It also appears that this was not taken into account in Defendant Schutze's testimony.

Therefore, the Court will award Defendant D'Oro only the $15,330 as damages for the refusal to return the case and samples. Defendants have offered to make provision in the judgment for credit on the judgment for each item returned to them by Plaintiff. The Court finds that this is only proper and judgment will be so entered.

■ Both Parties have requested attorney's fees under art. 2226 of Vernon's An-

notated Texas Statutes.[1] Of course, Plaintiff's claim must fail as he has not established his other claims. The Court finds that a reasonable attorney's fee to be awarded Defendants would be $2,100. based on the evidence presented. Defendant D'Oro made sufficient written demand under art. 2226 in the August 17, 1978, telegram to Plaintiff so it appears the formalities of the law have been complied with and judgment for $2,100. as attorney's fees will be entered.

Defendants' attorneys are requested to propose a form of judgment consistent with the conclusions of this opinion.

1. Article 2226 reads in pertinent part: "Any person, corporation, partnership, or other legal entity having a valid claim against a person or corporation for services rendered, labor done, material furnished, overcharges on freight or express, lost or damaged freight or express, or stock killed or injured or suits founded upon a sworn account or accounts, or suits founded on oral or written contracts, may present the same to such persons or corporation or to any duly authorized agent thereof; and if, at the expiration of 30 days thereafter, payment for the just amount owing has not been tendered, the claimant may, if represented by an attorney, also recover, in addition to his claim and costs, a reasonable amount as attorney's fees."