JOHN M. FISCHER, APPELLEE, v. VYT SKLENAR ET AL., APPELLANTS; WALLACE P. DIXON ET AL., APPELLEES.

FILED JULY 14, 1917. No. 19999.

1. **Descent and Distribution:** ADJUDICATION OF HEIRSHIP. A finding in a decree for final distribution of the estate of a deceased per-

Fischer v. Sklenar.

son that a certain person is the sole heir of the deceased, and an order assigning the estate of the deceased to the person so found to be the heir, complies with the provisions of sections 1494, 1495, Rev. St. 1913, and is a sufficient adjudication of heirship.

2. Judgment: COLLATERAL ATTACK: PROBATE COURT. Upon its probate side a county court is a court of general jurisdiction, and its judgment upon matters of probate and of settlement and distribution of the estates of deceased persons made upon due and proper notice is final and cannot be collaterally attacked.

3. Courts: JURISDICTION: HEIRSHIP: TITLE TO REALTY. The probate court in the settlement of an estate has jurisdiction to find and determine who are the heirs of the decedent. In so doing the court does not determine the title to real estate. The statute of descent passes the title upon the fact so found. The final determination of such fact by the probate court is binding upon all parties interested in the estate, unless it is set aside upon appeal.

4. Aliens: LANDS: TIME FOR DISPOSITION: QUESTION FOR COURT. Under art. II of the treaty of 1848 with Austria-Hungary (9 U. S. St. at Large, p. 945) alien heirs are allowed a term of two years in which to sell lands which they acquire, "which term may be reasonably prolonged, according to circumstances." The question as to the reasonableness of the prolongation is a matter for the courts to determine. *Pierson v. Lawler*, 100 Neb. 783.

5. Treaties: CONSTRUCTION. Treaties should be construed liberally in order that justice may be done to citizens or subjects of the contracting parties.

6. Aliens: DISPOSITION OF LAND: EXTENSION OF TIME. Where the circumstances make it reasonable that such aliens should have further time than the two years prescribed in which to sell their interest in the real estate, such further time as may be reasonable under all the circumstances of the case should be allowed.

7. ———: ———: ———. Under the circumstances set forth in the opinion, a period of between eight and nine months after the expiration of two years from the death of the person from whom the estate passed is held to be a reasonable prolongation.

APPEAL from the district court for Burt county: GEORGE A. DAY, JUDGE. *Affirmed*.

*Frank L. McCoy* and *E. H. Westerfield*, for appellants.

*E. C. Page, B. E. Hendricks, B. C. Enyart* and *F. S. Howell, contra*.

*Fawcett & Mockett* and *H. M. Uttley, amici curiæ*.

LETTON, J.

Action to quiet the title to certain lands in Burt county. Both parties claim title by inheritance from Augustine Sklenar, deceased, who died intestate in that county on the 27th day of December, 1909.

The plaintiff claims by mesne conveyances from Marie Anna Hamernik, a resident and citizen of Bohemia. The facts upon which plaintiff bases his claim of title are as follows: In the settlement of the estate of Augustine Sklenar, deceased, in the county court of Burt county, upon the application of the administrator for final settlement of the estate, a petition was filed in behalf of Mrs. Hamernik alleging that deceased died unmarried and without father or mother, that she was the illegitimate child of the deceased, that he had acknowledged himself in writing to be her father, and that she was his only child and sole heir, and praying that she be so adjudged and declared. She was so found and adjudged by the county court on August 27, 1912, and the real estate was duly assigned to her by said court.

The defendants are brothers and sisters of Augustine Sklenar, deceased, and parties claiming title under them. They admit that the deceased died intestate and unmarried, but deny that he had any children or issue either illegitimate or legitimate, and deny that he ever acknowledged himself to be the father of Mrs. Hamernik. They admit the administration proceedings, upon due notice, and the entry of the decree finding Mrs. Hamernik to be the sole heir and assigning the real estate to her, but deny that the same was made with jurisdiction or power in the court to enter such decree. They also allege that the deeds and conveyances from Mrs. Hamernik to the grantees therein under whom the plaintiff claims title are null and void as to these defendants and their grantees because they are in violation of the common law, of the Nebraska nonresident alien land statute, sections 6273, 6276, Rev. St. 1913, of the treaty of 1848 between the United States and Austria; of the Fourteenth Amendment to the Constitution of the

United States and the Constitution of the state of Nebraska; as an attempt to take the property of the defendants without due process of law; and as contrary to the meaning of the treaty of 1848. The remaining pleadings amount in substance to general denials of the material facts pleaded in the answer. A motion for judgment upon the pleadings was made by plaintiff and the other parties interested in like relief. In substance the court found that the county court of Burt county had full jurisdiction to make the findings, orders, and decrees of August 27, 1912; and that the same were and are binding and conclusive; that Marie Anna Hamernik is the sole heir of Augustine Sklenar, deceased, and it quieted the title in the plaintiff. Defendants appeal.

Three points are presented for review: (1) Was the decree of the county court a final and competent adjudication of heirship in Mrs. Hamernik? (2) Was this made with jurisdiction of the subject-matter and of the parties, and was it conclusive and *res judicata* as against the defendants and all persons claiming through or under them? (3) Granting that said finding was a conclusive adjudication that Marie Anna Hamernik was the daughter and sole heir of the deceased, did the failure on her part to sell and dispose of the real estate within two years from the death of the intestate under the terms of the treaty deprive her of any interest which she may have had in the land and operate to carry the title to the brothers and sisters of the intestate?

1. The appellants insist that no formal and valid decree of heirship and distribution of the land to Mrs. Hamernik was ever made; that it contains no language constituting a judgment, and hence is no adjudication. After making the customary recitals, the decree recites that the administrator *de bonis non* of the estate and the attorney in fact for Mrs. Hamernik appeared in person, and that each was sworn as a witness and testified in the matter. After finding that due notice of the hearing had been given, and the finding of facts as to the death of Sklenar,

his ownership and possession of the real estate, that due notice had been given of the time limited for the filing of claims against the estate, that an order had been made barring claims, that all claims allowed have been paid, and that more than two years have elapsed since administration was begun, the decree proceeds: "The court further finds that Augustine Sklenar, deceased, left no widow surviving him; that he left surviving him as his sole and only heir at law Marie Anna Hamernik, of Trebon, Bohemia, Europe, and that said Marie Anna Hamernik is now of full legal age." A number of other findings were made. The court then allows and confirms the reports of the administrator and orders the balance in his hands paid to the attorney of Mrs. Hamernik. The decree then proceeds: "It is further adjudged and decreed by the court that the real estate belonging to said estate, as hereinabove described and fully set out, be, and the same hereby is, assigned to Marie Anna Hamernik, of Trebon, Bohemia, Europe." The land had been fully described in a foregoing part of the decree.

The statute, sections 1494, 1495, Rev. St. 1913, provides: "1494. After the payment of the debts, * * * the county court shall, by a decree for that purpose, assign the residue of the estate, if any, to such other persons as are by law entitled to the same." "1495. In such decree the court shall name the persons, and the proportions or parts to which each shall be entitled." The decree found that Mrs. Hamernik was "the sole and only heir at law" of the deceased, and it assigned the real estate, which was described in the decree, to her by name. It may be conceded that it would have been better for the court to have made a more specific and formal entry adjudging that Marie Anna Hamernik was the child of Augustine Sklenar, was duly acknowledged to be such by him, and is his sole heir. Proceedings to administer estates of deceased persons in probate courts are statutory. When the record shows that the statutory findings and orders have been made, it is sufficient, even though not in the ordinary form. A

finding that a person is the sole heir of another, and a judgment and order assigning the estate of the deceased to the person so found, naming the person and the proportion to which he is entitled, and assigning the estate to the person who is by law entitled to the same, complies with the statute. The authorties cited by the appellant applying to ordinary courts, justices of the peace, and courts of record, are not applicable. In *Boales v. Ferguson,* 55 Neb. 565, cited by appellant, the heirs were not named, nor the amounts due them, respectively, determined, and the administrator having assumed the responsibility of distributing the estate before this was done was held to answer to·those who had suffered by his error.

2. It is conceded by defendants that as a general rule probate courts in the exercise of their original jurisdiction in the settlement of estates are vested with power and jurisdiction, at the time a final decree of distribution is made, to ascertain and determine the persons who constitute the heirs at law of the deceased, and that if such adjudication is made upon proper notice as required by the statutes of the several states, either personal or constructive, it. is final and conclusive against all parties interested, whether present or absent, whether having received actual notice, or not, and against the whole world. But defendants maintain that this general rule is not applicable in the state of Nebraska. It is their contention that, in view of the history of the constitutional and statutory provisions concerning the jurisdiction of the probate and county courts of Nebraska in territorial times, and since the territory became a state, the makers of the Constitutions of 1866 and 1875 intended to and did take away all jurisdiction of the probate and county court with reference to real estate, and that no act, judgment or decree of such courts can in any manner affect the title to lands. They concede that a judgment of heirship is valid and effectual as to the personal property of the deceased and is sufficient to authorize the administrator or executor to distribute the property in accordance with the decree.

Their argument, much abridged, is about as follows: That in the organizing act of 1854 (1 Complete Session Laws, p. 4) section 9, creating the territory of Nebraska, it was provided: "That the judicial power of said territory shall be vested in a supreme court, district courts, probate courts, and in justices of the peace. \* \* \* The jurisdiction of the several courts herein provided for, both appellate and original, and that of the probate courts and justices of the peace, shall be as limited by law: Provided, that justices of the peace shall not have jurisdiction of any matter in controversy when the title or boundaries of land may be in dispute." That in the Constitution of 1866, art. IV, sec. 4, it was provided: "The jurisdiction of the several courts herein provided for both appellate and original shall be as fixed by law: Provided, that probate courts, justices of the peace, or any inferior court, that may be established by the legislature shall not have jurisdiction in any matter wherein the title or boundaries of land may be in dispute. Nor shall either of the courts mentioned in this proviso have the power to order or decree the sale or partition of real estate." The Constitution of 1875, article VI, sec. 16, provided: "County courts shall be courts of record, and shall have original jurisdiction in all matters of probate, settlements of estates of deceased persons, appointment of guardians, and settlement of their accounts; in all matters relating to apprentices; and such other jurisdiction as may be given by general law. But they shall not have jurisdiction \* \* \* in actions in which title to real estate is sought to be recovered, or may be drawn in question; nor in actions on mortgages or contracts for the conveyance of real estate."

Under the statutes of 1855, 1856, and 1866, the probate courts were given power to decree sales of real estate to pay debts, and to make partitions of real estate. In 1867, however (General Laws 1867, p. 123), the decedent law was amended by substituting the word "district" for "probate" in a number of sections, so that the power to sell or partition real estate was thereby taken from the probate

court and vested in the district court. In *Stewart v. Daggy,* 13 Neb. 290, it is said: "The gross abuse of the power in some of the counties led to the insertion of a provision in the Constitution of 1867 depriving the probate courts of the authority to grant license, and conferred the same on the district courts. * * * The sole object of the change, so far as we can determine, was to place the matter in the hands of judges who would be free from local influence, and also, from their greater knowledge of the law, would be presumed to exercise greater care and circumspection in authorizing a sale."

The statutory provisions involved under which the county court acted are sections 1494, 1495, Rev. St. 1913, hereinbefore in part set forth.

Defendants insist that on account of the prohibitions in the Constitution the county court obtained jurisdiction only of the personalty of the estate by administration proceedings; that a finding as to heirship made in such proceedings can only have the force to protect the administrator in the distribution of the personal estate, and therefore the decree of the court is of no force, validity or effect as evidence of heirship in a controversy over the title to land. It is said that to hold otherwise would require an adjudication of heirship by a county court as a prerequisite to the passing of the title to real estate of deceased persons, and would imply that no title passing through an intestate is good which does not show upon the records or upon the abstract such a decree of heirship. This conclusion does not follow. We have held that heirship may be proved in many ways. *Jetter v. Lyon,* 70 Neb. 429. The heir may maintain ejectment while probate proceedings are pending, unless the administrator takes possession under the statute. *Lewon v. Heath,* 53 Neb. 707; 2 Woerner, American Law of Administration (2d ed.) sec. 337. We have held that the proceeding in the probate court to settle the estate of a decedent is a proceeding *in rem.* Every one-interested is a party in the probate court, whether he is named or not, and this is particularly true

as to the question of distribution of the estate. As to pro-
bate matters the county court is a court of general juris-
diction. Its judgment upon matters within its jurisdic-
tion cannot be collaterally attacked. *Lydick v. Chaney,*
64 Neb. 288; *Miller v. Estate of Miller,* 69 Neb. 441; *In re
Estate of Creighton,* 91 Neb. 654. The grounds upon
which courts generally have arrived at such conclusions
are that a proceeding to settle and distribute the estate of
a deceased person is of the nature of a proceeding *in rem;*
that, upon the presentation of a petition for letters of ad-
ministration and the appointment of an administrator,
the court takes control of the *res,* and thereafter, when
proper notice has been given of the time and place of the
hearing, the *res* itself is within the jurisdiction of the
court, and, the interested parties being either actually or
constructively present in accordance with the notice, the
court has jurisdiction of both the parties and the subject-
matter, and its judgment is final and conclusive unless ap-
pealed from.

The question is whether proceedings in the county court
by which that court ascertains who are the heirs of the de-
cedent to whom the administrator must yield possession
of the estate are "actions in which title to real estate is
sought to be recovered or may be drawn in question," of
which class of actions that court has no jurisdiction under
the Constitution.

Under the statute, on the death of an owner of land, the
same descends *eo instanti* to his heirs, whomsoever they
may be, unless, however, he has disposed of the same by
will. *Prima facie* no will exists, and, until the existence
of the writing has been shown and the instrument pro-
bated and established as having been executed in accord-
ance with the statute, there is no cloud upon the title of
the heirs to the real estate. *Brown v. Webster,* 87 Neb.
788. If, however, a will is produced, which by its terms
grants and devises lands of the testator to others than
his natural heirs, a decree of the court establishing the
fact that the instrument is the last will of the testator

affects the title to real estate as much as would a finding and decree of heirship made by the same court in the settlement of the estate of an intestate. The decree establishing the will would in no sense settle the identity of the persons named therein, nor would it settle other questions which might arise affecting the title to the real estate devised, such, for instance, as the validity of prior contracts to convey the same, which courts of equity frequently enforce; or which of the devisees take under conflicting provisons of the will. The sole fact that it establishes is that the testator executed the document in conformity with the statute. The title passes, not by the decree, but by the operation of the statute of wills. In a case where the county court in proceedings under proper notice ascertains who are the children or next of kin of the deceased, that fact, so adjudged, which it has jurisdiction to establish, does not affect the title to real estate any more than does an adjudication that an instrument is the last will of the deceased.

The object of a decree of distribution is to determine to whom the estate of the deceased should be delivered. Neither adverse claims, nor title to the property can be litigated in the proceeding. The title itself may not be drawn in question. No title passes by the decree to the persons named as heirs. It passes by the statute of descent, and not by the decree, which merely determines which persons are within the class to which the statute of descent applies. 11 R. C. L. 183. The county court has no power to determine the title of any one of them to any particular tract of land, since the power to partition real estate has been taken away from it by the Constitution and is now vested in the district court. "Since the functions of probate courts are limited, in respect of executors and administrators, to the control of the devolution of property upon the death of its owner, it is not their province to adjudicate upon collateral questions. The right or title of the decedent to property claimed by the executor or administrator against third persons, or by third per-

sons against him, as well as claims of third persons against creditors, heirs, legatees, devisees, or distributees, must, if an adjudication become necessary, be tried in courts of general jurisdiction, unless such jurisdiction be expressly conferred on probate courts." 1 Woerner, American Law of Administration (2d ed.) sec. 151.

The decree of the county court which ascertains the persons who are the heirs of a deceased person finds a fact and adjudges a status. It is a common thing that courts which have no jurisdiction to act upon certain matters may have jurisdiction to determine certain basic facts upon which the decision of the other matters may eventually depend. For instance, the courts of this state have no right to grant or refuse a license to sell intoxicating liquors in a given locality. The matter rests solely within the jurisdiction of the respective local administrative bodies, but the courts have the right to determine whether the jurisdictional facts exist which authorize the administrative officers to act. While the ultimate result may be to stop the issuance of a license, and the court has no power to grant or refuse it, yet the determination of the question is within its jurisdiction.

*Field v. Clark,* 143 U. S. 649, 12 Sup. Ct. Rep. 495, was a case in which the reciprocity act, which authorized the president to suspend the provisions of the act relating to the free introduction of sugar and other articles of commerce as to any countries "which he 'may deem to be reciprocally unequal and unjust,'" was attacked as unconstitutional because it gave the president both legislative and treaty-making powers. The court said (quoting from *Locke's Appeal,* 72 Pa. St. 491): "The legislature cannot delegate its power to make a law, but it can make a law to delegate a power to determine some fact or state of things upon which the law makes, or intends to make, its own action depend." It was also considered, reviewing the precedents, that congress had many times made the suspension of certain provisions and the going into effect of other provisions of acts of congress depend upon the as-

certainment by the president of certain facts to be made known by his proclamation. It was said: "As the suspension was absolutely required when the president ascertained the existence of a particular fact, it cannot be said that in ascertaining that fact, and in issuing his proclamation, in obedience to the legislative will, he exercised the function of making laws."

The proviso in section 16, art. VI, Const., is that county courts shall not have jurisdiction "in actions" in which the title to real estate is sought to be recovered or may be drawn in question. The word "actions" is not usually considered to include such proceedings as the settlement of estates, the probate of wills, or the distribution of property, though proceedings ancillary thereto may partake of the nature of actions, and issues may be raised as to title. In any such proceeding before the county court, if "title to real estate is sought to be recovered, or may be drawn in question," that court cannot make a final determination of such title. The history of legislation in this state seems to demonstrate that the intention was not to curb and limit the jurisdiction of county courts in purely probate matters, but in the civil and criminal jurisdiction which might be conferred upon them by the legislature. The proper construction of section 16, art. VI of the 1875 Constitution, is (though perhaps not in accordance with the punctuation) that the limitation therein contained only applies to and limits the last clause of the preceding sentence. After giving county courts original and unlimited jurisdiction in probate matters and in the settlement of estates of deceased persons, it is provided that such courts shall have such other jurisdiction as may be given by general law. "But they shall not have jurisdiction in criminal cases in which the punishment may exceed six months' imprisonment, or a fine of over five hundred dollars; nor in actions in which title to real estate is sought to be recovered, or may be drawn in question; nor in actions on mortgages or contracts for the conveyance of real estate; nor in civil actions where the debt or sum claimed

shall exceed one thousand dollars." None of these restrictions seem applicable to such courts in the exercise of purely probate jurisdiction. Probate, orphan, or surrogate courts do not have criminal jurisdiction, nor power to try title to land, nor to foreclose mortgages, nor ordinary civil jurisdiction. *Brogan v. Brogan,* 63 Ark. 405, 58 Am. St. Rep. 124; *Buckley v. Superior Court,* 102 Cal. 6, 41 Am. St. Rep. 135. Then, why should such a limitation be announced, if it did not apply to the extra or additional jurisdiction which might be conferred by act of the legislature? A consideration of the whole history of courts of probate in this country supports this construction. 1 Woerner, American Law of Administration (2d ed.) secs. 11, 141; Smith, Probate Law (5th ed.) ch. 1; Gary, Probate Law (2d ed.) ch. 2. Again, if a decree of distribution and ascertainment of heirship is an "action," then a claim against the estate of a decedent for a sum of money may with equal propriety be termed a "civil action," and the result of this construction would inevitably be that county courts in the settlement of the estate of deceased persons would have no jurisdiction where the claims exceeded $1,000. In this view of the case, we must conclude that the word "actions" in the one clause and "civil actions" in the other do neither refer to matters concerned with the settlement of estates.

Heretofore it has been assumed that the county court had power to determine the persons who were the heirs of a deceased intestate, and also to decide whether a person claiming to be the widow of an intestate and entitled to share in the distribution did in fact sustain such relationship. *Security Investment Co. v. Lottridge,* 2 Neb. (Unof.) 489; *Sorensen v. Sorensen,* 56 Neb. 729, 68 Neb. 483, 490. In the former case we find the following, after citing the statute as to the decree of distribution set forth hereinbefore: "The effect of these provisions seems to be to give the executor or administrator the possession pending settlement of the estate, and to require an order for delivery of the real estate in bulk to its owners when this is

done, and leave them then to apply to the district court for partition, if they can not divide it themselves." In the latter case (68 Neb. 490) we find: "The principal relief sought in a proceeding *in rem* is usually an adjudication upon the status of some person or thing, and the judgment, *ipso facto,* renders the status of such person or thing what it declares it to be. *Woodruff v. Taylor,* 20 Vt. 65. From the very nature and purpose of such judgment, it is essential that it be conclusive and binding on all persons. * * * We think the true rule is that a judgment *in rem* is binding and conclusive upon all persons as to every matter necessarily involved in the adjudication upon the status of the person or thing which is the subject-matter of the proceeding, but as to matters involved in collateral litigation therein, between particular parties, and not necessarily involved in a judgment of that character, it is binding only upon those who actually litigated such matters and their privies."

The statute, section 1366, Rev. St. 1913, gives the administrator the right to the possession of the real estate of the deceased, other than the homestead, and to its rents and profits "until the estate shall have been settled, or until delivered over, by order of the county court, to the heirs or devisees." And he may maintain ejectment to recover possession. *Dundas v. Carson,* 27 Neb. 634; *Tillson v. Holloway,* 90 Neb. 481. In order to relieve the personal representative of liability for rent and profits, the real estate must be delivered by him to the parties entitled thereto, and the ascertainment of the proper persons is strictly within the jurisdiction of the county court. *Boales v. Ferguson,* 55 Neb. 565; *Fauber v. Kein,* 88 Neb. 379.

As to what has been said by the appellants with reference to the contemporaneous construction of this statute, if construction by the legislature itself has any weight, that body has assumed that the power to determine who are the heirs of a deceased person resides in the county court by enactment of sections 1356-1360, Rev. St. 1913, passed in 1905, whereby proceedings for the ascertain-

ment of heirship without administration have been provided for. Furthermore, it has been well-nigh the universal custom for very many years, of which fact we may take judicial knowledge, that examiners of title have required exemplifications of the records of the county court showing the administration of the estate of a deceased landholder, and a final decree settling the estate and ascertaining and adjudging who are the heirs, before title derived by descent would be approved. In the absence of such a decree, in very many instances competent and satisfactory proof of heirship would almost be impossible to obtain. In answer to the argument that valuable rights may be lost by such decrees based upon constructive service of which other heirs may have no notice, the plaintiff urges that, under sections 8207-8215, Rev. St. 1913, ample provision is made for the vacation of judgments after the term; that by section 8215, Rev. St. 1913, these provisions are made applicable to county courts as well as to the district courts. They also provide for the contingency that one or more persons affected may be minors, and a period is allowed to minors after arrival at their majority in which their rights may be asserted. Whether these provisions are applicable to such decrees is not decided. The evil that may result, as pointed out by the defendants, from deciding that such decrees are conclusive as to matters of heirship may equally occur with respect to holding any judgment conclusive rendered upon proper constructive service if it affect the title to real estate; but there is no question that such judgments are final. In *Youngson v. Bond*, 69 Neb. 356, and other cases cited by defendants, which are all cases involving wills and their construction, it is held that such adjudications by county courts are made only for the purpose of advising and directing the executor in the discharge of his duties, and cannot bind the devisees as to their rights in the estate. The conclusion of the court in the cases was correct, but some of the language used in these opinions is susceptible of too broad a meaning. Properly considered, these cases are not in con-

flict with the views expressed herein. *Youngson v. Bond,* *supra,* holds that a suit brought by an administrator with the will annexed on the theory that a construction of the will was necessary in order to enable him to settle the estate is maintainable in the county court, and is within the exclusive original jurisdiction of that court; but that suit by trustees under the will, after settlement of an estate, to obtain a construction of the provisions of the will relating to their trust can only be brought in the district court. It is said by Commissioner Pound: "It is urged that section 16, art. VI of the Constitution, precludes a county court from construing a devise of lands. We do not think the provision in that section that the county court shall have no jurisdiction 'in actions in which title to real estate is sought to be recovered, or may be drawn in question,' affects the conclusion already reached in any way. The evident meaning is that the county court shall have no jurisdiction of actions to recover real property or wherein the present title to real property is directly or substantially involved. But the provision does not mean that the county court is to be without jurisdiction where a question of title arises incidentally or collaterally or where the present title is not involved. Many actions which are not in form brought to recover the title to real property, nevertheless, have the effect of settling and adjudicating the present title."

It may be true that the county courts of this state have not fully realized heretofore the exceeding importance and gravity of the proceedings in such courts ascertaining the persons who are the heirs or next of kin of a decedent whose estate is being administered. No such finding should be made without competent sworn testimony. The record should show the names of the witnesses examined and the fact of such examination, and, if the court is not fully satisfied with the proof, it should investigate on its own motion. It has been said that the title to all the property of the state passes through the probate court periodically in a comparatively short interval of time. This is

largely true, and hence the necessity for care and deliberation in the proceedings and for the making of a proper record.

The following cases, mainly from states whose probate laws are based on that of Massachusetts, in which no such limiting clause is found in the Constitution, but in some of which county or probate courts have no other than probate jurisdiction, are in line with the views herein expressed. Space forbids quotation or exegesis of the holdings therein. *Christianson v. King County,* 239 U. S. 356; *Jones v. Roberts,* 84 Wis. 465; *State v. Probate Court of Ramsey County,* 25 Minn. 22; *Greenwood v. Murray,* 26 Minn. 259; *McNamara v. Casserly,* 61 Minn. 335; *Ladd v. Weiskopf,* 62 Minn. 29; *Case of Broderick's Will,* 88 U. S. 503; *Fitzpatrick v. Simonson Bros. Mfg. Co.,* 86 Minn. 140; *Morse v. Morse,* 42 Ind. 365. An interesting case is *Kcahi v. Bishop,* 3 Hawaii, 546.

We conclude that the decree of the county court finding that Mrs. Hamernik is the sole heir of Augustine Sklenar, deceased, is a valid and binding adjudication of that fact, and cannot be assailed in this proceeding.

3. Appellants also claim that, since Mrs. Hamernik has always been a nonresident alien, she could not in any event inherit the fee to the land; that she could at most take only a limited right in or power of sale in the same; that, since the intestate died on December 27, 1909, under the treaty of 1848 with Austria-Hungary she had no interest or power over the land after December 28, 1911, two years from the time of the death, and that the county court, for the same reason, had no power thereafter to assign, distribute, or confirm in her the title to the land. The intestate died on December 27, 1909. The final decree was rendered August 27, 1912. Mrs. Hamernik, by an attorney in fact, sold and conveyed the land on September 9, 1912. The property was farm land and had always been so used by the intestate. No extension or prolongation of Mrs. Hamernik's right to sell had ever been made by any court or tribunal. Articles I and II of the treaty (9 U. S. St. at Large, p. 945) are as follows:

"Article I.   The citizens or subjects of each of the contracting parties shall have power to dispose of their personal property within the states of the other, by testament, donation, or otherwise, and their heirs, legatees, and donees, being citizens or subjects of the other contracting party, shall succeed to their said personal property, and may take possession thereof, either by themselves or by others acting for them, and dispose of the same at their pleasure, paying such duties only as the inhabitants of the country, where the said property lies, shall be liable to pay in like cases.

"Article II.   Where, on the death of any person holding real property, or property not personal, within the territories of one party, such real property would, by the laws of the land, descend on a citizen or subject of the other, were he not disqualified by the laws of the country where such real property is situated, such citizen or subject shall be allowed a term of two years to sell the same; which term may be reasonably prolonged, according to circumstances; and to withdraw the proceeds thereof, without molestation, and exempt from any other charges than those which may be imposed in like cases upon the inhabitants of the country from which such proceeds may be withdrawn."

Section 6273, Rev. St. 1913, is as follows: "Nonresident aliens and corporations not incorporated under the laws of the state of Nebraska are hereby prohibited from acquiring title to or taking or holding any lands or real estate in this state by descent, devise, purchase or otherwise, only as hereinafter provided, except that the widow and heirs of aliens who have prior to March 16, 1889, acquired lands in this state under the laws thereof, may hold such lands by devise or descent for a period of ten years and no longer, and if at the end of such time herein limited, such lands, so acquired, have not been sold to a *bona fide* purchaser for value, or such alien heirs have not become residents of this state, such lands shall revert and escheat to the state of Nebraska; and it shall be the duty

of the county attorney in the counties where such lands are situated to enforce forfeitures of all such lands as provided by this article."

Section 6276, Rev. St. 1913, allows nonresident aliens who have acquired liens upon real estate in this state to take a valid title to the real estate, provided that such land shall be sold within ten years. It is also provided that the provisions of the article shall not apply to real estate lying within the corporate limits of cities and towns. It is held in *Pierson v. Lawler,* 100 Neb. 783, that, under a treaty providing that the term in which to sell real estate inherited by a nonresident alien shall "be reasonably prolonged if circumstances render it necessary," it is a question for the judiciary whether the circumstances were such as to prolong the prescribed period. The language of the treaty under consideration is that the term of two years "may be reasonably prolonged according to the circumstances." Whether the circumstances in this case justify the prolongation can only be determined by the courts. It is clear that the term of two years provided in the treaty merely prevents the state from limiting the term below that period. If the state chooses to extend the term by statute, there is nothing in the treaty which in any wise controls or interferes with its discretion. Its power is supreme unless in such matters controlled and governed by the treaty, which by the federal Constitution is a law of the United States. Considering the liberal policy on the part of this state with reference to allowing a reasonable time for disposing of land, and, if sold, reserving to the alien heirs the value of the land, these treaties and statutory provisions should not be construed with undue harshness. Rev. St. 1913, secs. 6272-6276. That treaties are to be construed in a liberal method so as to protect citizens and subjects of both countries is held in *Doehrel v. Hillmer,* 102 Ia. 169; *Geofroy v. Riggs,* 133 U. S. 258. A case much like this arose in Illinois (*Scharpf v. Schmidt,* 172 Ill. 255), in which it was held that the provision that the "term may be reasonably prolonged," used in a like treaty,

means that the courts in passing on their rights may allow the alien heirs such time, in addition to the two years limitation, as is reasonable under the circumstances, to enable them to sell. Other cases are cited in the opinion in that case, and the topic is considered in *Ehrlich v. Weber*, 114 Tenn. 711; *Kull v. Kull*, 37 Hun (N. Y.) 476; 1 R. C. L. 806; and in a note to *Ahrens v. Ahrens*, 144 Ia. 486, in Am. Ann. Cas. 1912A, 1098.

Under our statute the administrator is entitled to possession of real estate pending administration. Not until eight months after the two year period had expired was the decree rendered which found that Mrs. Hamernik was the sole heir of the deceased. Within 15 days thereafter she disposed of the property to a *bona fide* purchaser, and through him the plaintiff and other appellees derive their interest in the property. Having in mind the peculiar facts as to illegitimacy and other circumstances in the case, following the rule of liberal construction, and considering the policy of the state as shown by the statute, we are of opinion that the prolongation of the term from December 24, 1911, to September 10, 1912, was not unreasonable, and that Mrs. Hamernik had the right to sell and dispose of the property at the latter date.

We find no error in the judgment of the district court on the facts set forth in the pleading, and it is therefore

AFFIRMED.

HAMER, J., concurring.

I concur in the conclusion of the majority opinion as I understand it. In the 47 years which I have spent endeavoring to follow and understand the decisions of this court, perhaps no more important question has been considered than that disposed of in this case. I believe that the district court has jurisdiction in the first instance to try title to land, and that the jurisdiction of the county court is confined in land cases to such subjects as may be properly considered in the adjudication of probate matters. I do not believe that title to land should pass under the de-

cree alone of the county court adjudicating heirship. A controversy between heirs or devisees concerning title to real estate should always be first determined by the district court, which alone has original jurisdiction to try title to land.

Much of the business of the county court is of a probate character, and the proceedings are often nearly or quite *ex parte.* They may be without actual notice to the real parties in interest. I believe that the exclusive jurisdiction of the county court is confined, where the title to land is sought to be brought in question, to the disposition of matters of probate, and that such jurisdiction should not be extended so as to oust the jurisdiction of the district court concerning the matters in which the title to land is in dispute. I so construe the decision which we have rendered.

I write this to avoid ambiguity and to make my position manifest and clear.