**MILLER, Alien Property Custodian, et al. v. CLAUSEN et al.**

(Circuit Court of Appeals, Eighth Circuit. May 17, 1924.)

No. 6448.

1. **Courts ⬤⟞489(13)—Nebraska county court held to have jurisdiction to determine who were heirs to land, notwithstanding Alien Property Custodian had taken possession.**

County court in Nebraska, in view of Rev. St. 1913, §§ 1349, 1350, 1494–1499, had jurisdiction to determine who were heirs to land, though Alien Property Custodian had taken possession thereof under section 9, subsec. (a), of Trading with the Enemy Act, as amended by Act June 5, 1920, Act Feb. 27, 1921, and Act Dec. 27, 1922 (Comp. St. Ann. Supp. 1923, § 3115½e), on ground that some heirs were alien enemies.

2. **Aliens ⬤⟞13—Title to land passed to citizen heirs, where alien heirs failed to exercise power of sale under Nebraska statute, as permitted by German treaty.**

Under Laws Neb. 1919–21, c. 142, disqualifying nonresident alien heirs from inheriting real property, title to land passes in its entirety to citizen heirs, unless alien German heirs exercised their right to sell property and withdraw proceeds within reasonable time, as permitted by treaty of 1828 between United States and Prussia.

3. **Courts ⬤⟞200½—Nebraska county court has jurisdiction to determine who are heirs, notwithstanding constitutional provision.**

Notwithstanding Const. Neb. art. 6, § 16, county court has jurisdiction to determine who are heirs to real estate, under Rev. St. Neb. 1913, §§ 1494–1499, though determination of such question involves incidental question of title.

4. **War ⬤⟞12—Nebraska county court decree of heirship held admissible in action against Alien Property Custodian.**

In action against Alien Property Custodian to obtain real property in his possession under Trading with the Enemy Act, § 9, subsec. (a), as amended by Act June 5, 1920, Act Feb. 27, 1921, and Act Dec. 27, 1922 (Comp. St. Ann. Supp. 1923, § 3115½e), a decree of Nebraska county court, declaring plaintiff to be heir and entitled to land as against alien heirs, *held* admissible in evidence.

5. **Aliens ⬤⟞13—Citizen held to take as immediate heir of deceased.**

Where citizen of Nebraska died, leaving father, an alien German, as his heir to land, and such father died without exercising his right within a reasonable time to sell land and receive proceeds, as permitted under treaty of 1828 between Prussia and the United States, and leaving a number of heirs, only one of whom was a citizen of the United States, the latter took as immediate heir of citizen dying in Nebraska.

6. **War ⬤⟞12—Court did not err in adjudging that Alien Property Custodian pay into court full amount of taxes against land.**

On recovery of land from Alien Property Custodian, under Trading with the Enemy Act, § 9, subsec. (a), as amended by Act June 5, 1920, Act Feb. 27, 1921, and Act Dec. 27, 1922 (Comp. St. Ann. Supp. 1923, § 3115½e), the District Court did not err in adjudging that defendant pay into court full amount of taxes against land, since direction to pay into court was tantamount to his paying, as required by Trading with the Enemy Act, as amended by Act July 1, 1918 (Comp. St. Ann. Supp. 1919, § 3115½fff).

7. **United States ⬤⟞147—Order to Alien Property Custodian to take costs out of funds not adjudication of costs against United States.**

Adjudging costs in favor of one suing Alien Property Custodian and Treasurer of United States for return of property under Trading with the Enemy Act, § 9, subsec. (a), as amended by Act June 5, 1920, Act Feb. 27,

⬤⟞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

1921, and Act Dec. 27, 1922 (Comp. St. Ann. Supp. 1923, § 3115½e), order being to pay out of funds involved, was not an adjudication of costs against United States.

Stone, Circuit Judge, dissenting.

Appeal from the District Court of the United States for the District of Nebraska; Joseph W. Woodrough, Judge.

Action by Catharina Clausen against Thomas W. Miller, as Alien Property Custodian, and another. Decree for plaintiff, and defendants appeal. Plaintiff dying pending appeal, George Arthur Clausen and another, her heirs at law, were substituted as appellees. Affirmed.

Dean Hill Stanley, Sp. Asst. Atty. Gen. (James C. Kinsler, U. S. Atty., of Omaha, Neb., and A. R. Johnson, Jr., Sp. Asst. Atty. Gen., on the brief), for appellants.

Peter B. Nelson, of Chicago, Ill. (Arthur L. Palmer and Ralph O. Canaday, both of Omaha, Neb., on the brief), amici curiæ.

Philip N. Johnston, of Omaha, Neb. (George E. Turkington, of Omaha, Neb., on the brief), for appellee Catharina Clausen.

Before STONE and LEWIS, Circuit Judges, and PHILLIPS, District Judge.

PHILLIPS, District Judge. Catharina Clausen, now deceased, brought this action against Thomas W. Miller, as Alien Property Custodian, and Frank White, as Treasurer of the United States (hereinafter called appellants), under subsection (a) of section 9 of the Trading with the Enemy Act, as amended (41 Stat. 977; 41 Stat. 1147; 42 Stat. 1065 [Comp. St. Ann. Supp. 1923, § 3115½e]), to obtain the payment, conveyance, transfer, assignment, or delivery to her of certain real and personal property, theretofore seized by the Alien Property Custodian.

The facts are as follows: One Andrew Hansen died intestate in Morrill county, Neb., July 17, 1911, seized of an estate of real and personal property. The county court of Morrill county appointed an administrator of his estate, who took possession of the real and personal property belonging thereto. On November 6, 1919, the Alien Property Custodian of the United States seized the property of said estate in the hands of said administrator, being the real estate involved in this action and $2,113 in money. Thereafter said administrator was discharged. The estate of Andrew Hansen, however, was not closed, and after the seizure Catharina Clausen filed her petition in said estate for a decree of heirship under the provisions of section 1496, Rev. St. Neb. 1913. On September 21, 1922, after due and legal notice, a hearing was had on said petition in the county court and a decree of heirship was made and entered by said court.

The county court found the following facts:

That Andrew Hansen died intestate, in Morrill county, Neb., July 17, 1911, leaving an estate of real and personal property in said county to be administered; that Andrew Hansen was never married and left no issue; that his mother preceded him in death; that he left sur-

viving him his father, Hans Christian Hansen, who at all times prior to his death was a resident and citizen of the German Empire; that Hans Christian Hansen died November 27, 1916; and that Andrew Hansen left surviving him a number of brothers, sisters, nephews and nieces, all of whom, except Catharina Clausen, were and at all times had been residents and citizens of the German Empire.

That Catharina Clausen was a resident and citizen of the United States and had been since prior to the death of Andrew Hansen.

That at the time of his death Andrew Hansen was the owner of certain real estate situate in the county of Morrill, state of Nebraska. (The real estate referred to is particularly described in the findings and is the real estate involved in this action.)

That more than 11 years had elapsed since the death of Andrew Hansen, and that no sale had been made of any of said real estate either by the said Hans Christian Hansen or by any of his heirs.

After finding the foregoing facts the county court made the following decree:

"It is therefore ordered and decreed that the said Catharina Clausen is the only heir of the said Andrew Hansen who is qualified to take and to hold said real estate and the personal property owned by the said Andrew Hansen at the time of his death, and the same is hereby assigned to the said Catharina Clausen in its entirety.

"For the purpose of further administering this estate since the discharge of the administrator herein, for carrying out this decree and for distributing the funds and property of this estate, H. H. Smith is hereby appointed administrator de bonis non, conditioned upon his taking an oath of office as such and furnishing a bond in the sum of '$3,000 to be approved by this court, and the said administrator de bonis non is entitled to receive from the Alien Property Custodian, his agents and representatives, the property and funds of this estate."

This decree was offered in evidence at the trial. To the offer appellants objected on the ground that the same was entered after the property had been seized by the Alien Property Custodian, and that thereupon the title and rights to said property became determinable only in the United States court, and that the county court of Morrill county had no jurisdiction to determine as to the appellants the rights and title to the property of said decedent. This objection was overruled.

It appeared from the pleadings and evidence, independent of the decree, that neither Hans Christian Hansen during his lifetime nor any of his nonresident alien heirs since his death had sold or disposed of the property in question.

The appellants' sole claim of right to hold the property was predicated upon the contention that the title thereto was in the heirs of Hans Christian Hansen who were nonresident aliens.

The lower court entered a decree in favor of Catharina Clausen and ordered the appellants to convey, transfer, assign and deliver to her the real estate and to account for the rents and profits collected therefrom during the time it was held by appellants and to pay into court the full amount of taxes against said land and the costs of administration and this action, but held it had no jurisdiction to dispose of the personal property seized. From this decree the appellants appealed to this court.

Pending this appeal Catharina Clausen died and George Arthur Clausen and Anna Marie Bateman, her heirs at law, were substituted for her as appellees.

[1, 2] The appellants' first contention is that the court erred in receiving the decree of heirship in evidence.

The right to determine and decree who are the heirs at law of a decedent in Nebraska is vested solely in the county courts.

Section 1349, Rev. St. Neb. 1913, provides that, when the authority of an administrator shall be extinguished, if there shall be no other administrator remaining the court of probate may commit administration of the estate not already administered to some suitable person. Section 1350, Rev. St. Neb. 1913, provides that such administrator "shall have the same powers, and shall proceed in settling the estate in the same manner as the former executor or administrator should have had or done." Sections 1494 to 1499, Rev. St. Neb. 1913, provide for a decree of heirship and distribution in the course of the administration of an estate. Section 1495 provides that such decree "shall name the persons, and the proportions or parts to which each shall be entitled, and such persons shall have the right to demand and recover their respective shares from the executor or administrator, *or any person having the same.*" (Italics ours.) .

The Nebraska statute of descent and distribution (Laws 1919–21, c. 142) disqualifies a nonresident alien heir from inheriting real property. The treaty of 1828 between the United States and Prussia (8 Stat. 378), however, suspends the effect of this statute for a reasonable time after the death of the decedent and gives to the nonresident alien heir during that period the right to sell the property and withdraw the proceeds.

In discussing the construction of this statute and treaty provision the Supreme Court of Nebraska, in Pierson v. Lawler, 100 Neb. 783, at page 786 (161 N. W. 419, 420), said:

"In the absence of a treaty, the inheritance of land by a nonresident alien would be defeated by a statute of Nebraska. Rev. St. 1913, § 6273. The nature of the interest acquired by a nonresident alien under the terms of the treaty and the descent of title are subjects which have been explained as follows:

" 'There is much discussion in the cases as to the nature of the title which nonresident aliens held under the terms of this treaty. Some authorities denominate it a base or qualified fee, and others as a terminable fee. The terminology is not of controlling importance. That the right to sell carried with it the ownership as a necessary incident to the power of sale is held by all the authorities. That such ownership was something less than a fee simple absolute is also quite beyond discussion. That the remainder of such title vested in the resident heirs, and that such remainder drew the full fee-simple title into such resident heirs upon failure of the condition upon which the nonresident aliens took their title, seems to us clear. The authorities are quite uniform, also, in holding that upon failure of the condition imposed by the treaty, the title of the nonresident alien would fail by operation of law. Under such circumstances the treaty furnishes no further impediment to the statute. It ceases, so to speak, to suspend the statute, and the full fee-simple title vests in the persons upon whom the statute undertook to cast it in the first instance. This is the net result in all the cases, although it may be reached by a different course of reasoning, and by the use of a varying terminology.' Ahrens v. Ahrens, 144 Iowa, 486; Wunderle v. Wunderle, 144 Ill. 40, 64–67."

On the death of Andrew Hansen the entire fee-simple title to the land in question by virtue of the statute vested in his heirs. In the case of Fischer v. Sklenar, 101 Neb. 553, the Supreme Court of Nebraska, at page 561 (163 N. W. 861, 864), said:

"Under the statute, on the death of an owner of land, the same descends eo instanti to his heirs, whomsoever they may be, unless, however, he has disposed of the same by will."

Therefore, on the death of Andrew Hansen, something less than a fee simple absolute, a base or qualified fee or a terminable fee vested in Hans Christian Hansen, and the remainder vested in Catharina Clausen, and after a reasonable time had elapsed without Hans Christian Hansen having availed himself of the rights given him by the treaty, there was a failure of the conditions imposed by the treaty, the title of Hans Christian Hansen failed by operation of law, the statute came into full force and effect, and the full fee-simple title vested in Catharina Clausen.

Counsel for the appellants say that the effect of the decree of the county court was to adjudge the title to the lands and real estate in Catharina Clausen; that after the seizure of the property the sole jurisdiction to adjudicate as to the title thereto was vested in either the United States District Court of the district wherein the claimant resides or the Supreme Court of the District of Columbia; and that under the Constitution of the state of Nebraska (article 6, § 16, Const. of 1875) county courts have no jurisdiction in actions in which the title to real estate is sought to be recovered or may be drawn in question.

The contention that the county court of Morrill county had no jurisdiction because of the provisions of the Trading with the Enemy Act is not sound. That act did not take away from the county court its peculiar jurisdiction to determine who were the heirs of Andrew Hansen and to adjudicate their status as such.

[3] Construing the provision of the Nebraska Constitution, relied on by appellants, the Supreme Court of Nebraska, in Fischer v. Sklenar, 101 Neb. 553, 163 N. W. 861, said:

"The question is whether proceedings in the county court by which that court ascertains who are the heirs of the decedent, to whom the administrator must yield possession of the estate, are 'actions in which title to real estate is sought to be recovered or may be drawn in question,' of which class of actions that court has no jurisdiction under the Constitution. * * *

"The object of a decree of distribution is to determine to whom the estate of the deceased should be delivered. Neither adverse claims nor title to the property can be litigated in the proceeding. The title itself may not be drawn in question. No title passes by the decree to the persons named as heirs. It passes by the statute of descent, and not by the decree, which merely determines which persons are within the class to which the statute of descent applies. 11 R. C. L. 183. The county court has no power to determine the title of any one of them to any particular tract of land, since the power to partition real estate has been taken away from it by the Constitution and is now vested in the district court. Since the functions of probate courts are limited, in respect of executors and administrators, to the control of the devolution of property upon the death of its owner, it is not their province to adjudicate upon collateral questions. The right or title of the decedent to property claimed by the executor or administrator against third persons,

or by third persons against him, as well as claims of third persons against creditors, heirs, legatees, devisees, or distributees, must, if an adjudication become necessary, be tried in courts of general jurisdiction, unless such jurisdiction be expressly conferred on probate courts.' 1 Woerner, American Law of Administration (2d Ed.) § 151.

"The decree of the county court which ascertains the persons who are the heirs of a deceased person finds a fact and adjudges a status. It is a common thing that courts which have no jurisdiction to act upon certain matters may have jurisdiction to determine certain basic facts upon which the decision of the other matters may eventually depend. * * *

"The proviso in section 16, art. 6, Const., is that county courts shall not have jurisdiction 'in actions' in which the title to real estate is sought to be recovered or may be drawn in question. The word 'actions' is not usually considered to include such proceedings as the settlement of estates, the probate of wills, or the distribution of property, though proceedings ancillary thereto may partake of the nature of actions, and issues may be raised as to title. In any such proceeding before the county court, if 'title to real estate is sought to be recovered, or may be drawn in question,' that court cannot make a final determination of such title. The history of legislation in this state seems to demonstrate that the intention was not to curb and limit the jurisdiction of county courts in purely probate matters, but in the civil and criminal jurisdiction which might be conferred upon them by the Legislature. The proper construction of section 16, art. 6, of the 1875 Constitution, is (though perhaps not in accordance with the punctuation) that the limitation therein contained only applies to and limits the last clause of the preceding sentence. After giving county courts original and unlimited jurisdiction in probate matters and in the settlement of estates of deceased persons, it is provided that such courts shall have such other jurisdiction as may be given by general law. 'But they shall not have jurisdiction in criminal cases in which the punishment may exceed six months' imprisonment, or a fine of over five hundred dollars; nor in actions in which title to real estate is sought to be recovered, or may be drawn in question; nor in actions on mortgages or contracts for the conveyance of real estate; nor in civil actions where the debt or sum claimed shall exceed one thousand dollars.' None of these restrictions seem applicable to such courts in the exercise of purely probate jurisdiction. Probate, orphan, or surrogate courts do not have criminal jurisdiction, nor power to try title to land, nor to foreclose mortgages, nor ordinary civil jurisdiction. Brogan v. Brogan, 63 Ark. 405, 58 Am. St. Rep. 124; Buckley v. Superior Court, 102 Cal. 6, 41 Am. St. Rep. 135. Then why should such a limitation be announced, if it did not apply to the extra or additional jurisdiction which might be conferred by act of the Legislature? A consideration of the whole history of courts of probate in this country supports this construction. 1 Woerner, American Law of Administration (2d Ed.) §§ 11, 141; Smith, Probate Law (5th Ed.) c. 1; Gary, Probate Law (2d Ed.) c. 2. Again, if a decree of distribution and ascertainment of heirship is an 'action,' then a claim against the estate of a decedent for a sum of money may with equal propriety be termed a 'civil action,' and the result of this construction would inevitably be that county courts in the settlement of the estate of deceased persons would have no jurisdiction where the claims exceeded $1,000. In this view of the case, we must conclude that the word 'actions' in the one clause and 'civil actions' in the other do neither refer to matters concerned with the settlement of estates.

"Heretofore it has been assumed that the county court had power to determine the persons who were the heirs of a deceased intestate, and also to decide whether a person claiming to be the widow of an intestate and entitled to share in the distribution did in fact sustain such relationship. Security Investment Co. v. Lottridge, 2 Neb. (Unof.) 489; Sorensen v. Sorensen, 56 Neb. 729, 68 Neb. 483, 490. In the former case we find the following, after citing the statute as to the decree of distribution set forth hereinbefore: 'The effect of these provisions seems to be to give the executor or administrator the possession pending settlement of the estate, and to require an order for delivery of the real estate in bulk to its owners when this is done, and leave them then

to apply to the district court for partition, if they cannot divide it themselves.'"

In the case of State v. O'Connor, 102 Neb. 187, 166 N. W. 556, the Supreme Court of Nebraska said, referring to Fischer v. Sklenar, supra, and State v. Keller, 101 Neb. 552, 163 N. W. 868:

"In these cases it was held that the county court has exclusive original jurisdiction to determine the persons who are the heirs of a deceased person, and that its judgment in this respect is final, to the same degree and to the same extent as that of any other court of record."

It is clear from the foregoing Nebraska decisions that the probate court had jurisdiction to determine who the heirs were and to whom the estate should be delivered.

The power to determine the persons to whom the estate should be delivered is not limited to cases where the administrator has manual possession of the property. Section 1495, Rev. St. Neb. 1913, provides that the persons decreed to be the heirs shall have the right to demand and recover the property from any person having the same.

If the period of time—a reasonable time—given to Hans Christian Hansen to exercise his rights under the treaty had not elapsed when the county court came to enter the decree of heirship and distribution then it would have been its duty to have directed delivery of the real estate to Hans Christian Hansen because the alien heir upon distribution within the period provided by the treaty is entitled to possession. Schultze v. Schultze, 144 Ill. 290, 33 N. E. 201, 19 L. R. A. 90, 36 Am. St. Rep. 432; Kull v. Kull, 37 Hun, 476.

On the other hand, if that period of time had elapsed and the alien heir had not sold and conveyed the real estate, when the county court came to enter its decree, it would then have been its duty to have directed delivery of the property to the resident heir, who then took the full fee-simple title. It would seem that in the exercise of its purely probate jurisdiction, in order to determine to whom the estate should be delivered in bulk, it was necessary for the county court to determine either that a reasonable time had not elapsed within which the nonresident alien heir was required to exercise the rights given him by the treaty and that the estate was deliverable to him, or that a reasonable time had elapsed within which the nonresident alien heir was required to exercise the rights given him under the treaty, that he had failed to exercise them within that time, and that the estate was deliverable to the resident heir, even though to do so involved the consideration of a question of title because the county court could incidentally pass upon a question of title where it was so involved in a matter clearly within its probate jurisdiction that the necessary adjudication of the matter within its jurisdiction could not be had without an incidental consideration of the question of title. Logue v. Ferris (C. C. A. 8) 280 Fed. 286, at page 289.

[4] We consider it unnecessary, however, in this case, to hold that the county court could go so far. It cannot be doubted that it had full jurisdiction to determine who the heirs of Andrew Hansen were. Hans Christian Hansen, being a nonresident alien, it was necessary for the court to determine the status of Hans Christian Hansen as a

nonresident alien and the status of Catharina Clausen as the sole immediate heir in the United States qualified to take under the statute, because, even under the statute as limited by the treaty both were heirs, one taking less than the entire fee and the other the remainder. Pierson v. Lawler, supra. It also had jurisdiction to determine the date of the death of Andrew Hansen and what property of his estate was subject to distribution. Therefore, so far as the decree determined the relationship, residence and alienage of Hans Christian Hansen, the relationship and the American citizenship of Catharina Clausen, the date of the death of Andrew Hansen and what property was subject to distribution it was no more than a decree of heirship, a matter clearly within the jurisdiction of the probate court, and to this extent it was proper evidence to be considered by the trial court.

As indicated above, there was other evidence which warranted the finding that the nonresident alien heirs had not exercised the rights given them under the treaty. The trial court was therefore warranted in finding from the evidence adduced that the real property in question passed under the statute of descent and distribution as suspended by the treaty to Hans Christian Hansen and Catharina Clausen, that a reasonable time had elapsed within which Hans Christian Hansen was required to exercise his rights under the treaty, and that neither Hans Christian Hansen nor the other non-resident alien heirs had sold and conveyed the real estate, and therefore the entire fee-simple title had vested in Catharina Clausen, and there was no title in the persons through whom the government undertook to seize and hold the property.

It may be that the decree of the lower court does not finally determine the matter as between the heirs of Hans Christian Hansen and of Catharina Clausen, for the reason that the former were not parties to the action, but that question is not presented here.

[5] The second contention of counsel for appellants is that Catharina Clauson takes, if at all, by right of inheritance from Hans Christian Hansen, and therefore, if his title failed she took none. In this they are in error. Catharina Clausen took as the immediate heir of Andrew Hansen. Renner v. Muller, 44 N. Y. Super. Ct. 535; State v. Ellis, 72 Kan. 285, 83 Pac. 1045; Wilcke v. Wilcke, 102 Iowa, 173, 71 N. W. 201; State v. Toop, 107 Neb. 391, 186 N. W. 371.

[6] The third contention of appellants is that the court erred in adjudging that appellants pay into the District Court the full amount of taxes against the land.

Trading with the Enemy Act was amended July 1, 1918 (40 Stat. 646 [Comp. St. Ann. Supp. 1919, § 3115½fff]), as follows:

"All taxes heretofore or hereafter lawfully assessed by any body politic against money or other property held by the Alien Property Custodian shall be paid out of such money or other property, and if that be insufficient, shall be charged thereto and paid out of any other moneys or properties required from the same enemy or ally of enemy."

If the custodian has paid the taxes pursuant to this section, the direction of the decree does not affect him. If he has not paid them, the direction to pay the money into the District Court is tantamount to his paying them as required by the statute.

[7] The fourth contention of the appellants is that the court erred in adjudging costs in favor of the appellees. This order is to pay the costs out of the funds, and is not an adjudication of the costs against the United States.

The decree is affirmed.

STONE, Circuit Judge. I am compelled to dissent because I think (1) the decree in the state county court as to title is not binding upon this court; (2) the findings set forth in and made the basis of that decree are not evidence herein; and (3) if such findings be denied evidentiary value herein, there is no evidence to support the decree herein.

The evidence herein consisted (a) of the above decree of the county court of Morrill county, Neb., rendered on September 21, 1922, in the matter of the estate of the deceased brother; (b) of the testimony of one witness, George E. Turkington; and (c) of certain stipulated facts.

The facts stipulated were: That Schleswig-Holstein was a part of the Prussian Kingdom until November 11, 1918; that there was reason to suppose that the alien brothers and sisters had some interest in the land; that, for the purposes of seizure, the Custodian had determined in an ex parte proceeding that said persons had some interest in the land; and that, since the conclusion of the war, said alien sisters and brothers had filed claims to said land with the Custodian.

The testimony of Turkington was that appellee was a resident of Morrill county, Neb.; that she had resided with her deceased brother at and prior to the time of his death on the land in question; that immediately following the death of the brother in 1911, an administrator of his estate had been duly appointed and had taken possession of the real and personal property of the deceased; that appellee had continued to reside on said land after her brother's death and said land continued in either her or the administrator's possession until seized by the Custodian.

The decree of the county court found and determined as follows: That the brother died intestate and unmarried in 1911 in Morrill county, Neb., leaving the land and personal property in said county; that his sole heir at law was his father; that the father had never been a citizen of the United States and was at all times a citizen of Schleswig-Holstein until his death in 1916; that at the death of the brother there were surviving him a number of brothers, sisters, nephews, and nieces, all of whom, except appellee, were citizens of Schleswig or other provinces of Germany; that appellee had been for more than 30 years a resident and citizen of the United States, and a resident of the state of Nebraska; that the brother was owner of certain described real estate in Morrill county, Neb.; that since the death of the brother no attempt had been made by the father, nor since the death of the father, by any of the heirs, to sell the said land; that, because of the above facts found, it was decreed that appellee was the only heir of said deceased brother qualified to take and hold said land and money and the same was established and assigned to her in its entirety. It was also decreed that for the purposes of further administration of the estate, and for the carrying out of the decree and distribution of

the funds and property of the estate, an administrator de bonis non be appointed and authorized to receive the property and funds from the Alien Property Custodian.

The consideration of the above evidence in connection with the issues involved and the decree here appealed from disclose a dearth of evidence upon which to base this decree and the findings of fact contained therein unless the trial court was bound by or could accept as evidence the findings and determination contained in the decree of the county court of Morrill county. The attack upon the admissibility of that decree is, therefore, of vital importance.

I have reached the conclusion that this decree was not admissible for any purposes unless it be as evidence of the death of the brother, the ownership in him, at the time of death, of the money and land in question within the state of Nebraska and that an administrator had been appointed shortly after the death. My reasons for reaching this conclusion are as follows: The Trading with the Enemy Act, as amended, defined the only methods by which the rights of claimants as against the Custodian to property seized and held by him could be asserted and established. These methods were, first, demand by the claimant upon the Custodian for the property; second, if such demand be refused, the initiation and prosecution of an equity suit in the designated United States courts to determine the respective rights of the claimant and of the Custodian to the property in question. This court proceeding contemplated the introduction and consideration of competent testimony. It did not contemplate the mere ratification of what some other court might have decided concerning the right of the custodian. Of course, any court of competent jurisdiction, state or national, might determine the titles, rights and interests of individuals as between themselves and such adjudication might be proper evidence or might even be binding upon the Custodian as to the right of the parties among themselves, but when such judgment is tendered in evidence in an action against the Custodian, under the national statute, for return of property, the jurisdiction of the state court over the parties and subject-matter and to determine the things covered in the judgment may, of course, be questioned. It has been directly held by this court, in a recent case, that the county courts of Nebraska have no jurisdiction to determine the title to real estate as an adjunct or part of their jurisdiction in administering estates of deceased persons. 280 Fed. 286. Therefore the determination of the Morrill county court that appellee was the sole heir in this land and property was without the jurisdiction of that court and the findings of fact upon which it was based are of no evidentiary force in an action like the present. Those facts must be established by proper, competent evidence. Therefore, admission of the judgment in this court for these purposes was, in my judgment, error. Since the decree appealed from here must fall for lack of evidence, with the decree of the county court out of the case, I think the decree should be reversed.